VIRGINIA I. CRAIG, Plaintiff-Appellee and Cross-Appellant, v. CITICORP SAVINGS, Defendant-Appellant and Cross-Appellee.

Fifth District   No. 5—89—0801

Opinion filed September 11, 1991.

CHAPMAN, J., concurring in part and dissenting in part.

Carl L. Favreau, of Campbell, Black, Carnine & Hedin, P.C., of Mt. Vernon, for appellant.

Daniel R. Price and Jennifer W. Price, both of Wham & Wham, of Centralia, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The plaintiff, Virginia Craig, brought suit against the defendant, Citicorp Savings, in two counts, the first pertaining to the defendant's refusal to pay principal and interest on a certificate of deposit issued in

plaintiff's name, the second for conversion. The defendant refused to pay on the basis that the plaintiff had paid no consideration for the certificate and that the certificate was issued in her name by mistake. The trial court granted the plaintiff's motion for summary judgment and denied the defendant's motion to reconsider the ruling granting summary judgment; the defendant has appealed. The trial court granted the defendant's motion to dismiss the second count of the complaint, allowing plaintiff leave to amend. However, the plaintiff filed a notice of intention to stand on the second count of her complaint, the trial court entered judgment dismissing that count with prejudice, and plaintiff has cross-appealed.

The defendant presents a single issue for review, whether the trial court improperly granted summary judgment and improperly denied defendant's motion to reconsider that ruling. Section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c)) provides that summary judgment shall be rendered "if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In making the determination whether there is a genuine issue as to any material fact, the court must construe the pleadings, depositions, and affidavits most strictly against the moving party and most liberally in favor of the opponent. (*Martin v. American Legion Post No. 784* (1978), 66 Ill. App. 3d 116, 383 N.E.2d 672.) Where the facts admit of more than one conclusion, including a conclusion unfavorable to the party moving for summary judgment, such facts cannot support a motion for summary judgment. (*Martin*, 66 Ill. App. 3d 116, 383 N.E.2d 672.) In determining whether there is a genuine issue of material fact, inferences may be drawn from the facts that are not in dispute. (*Riley v. Singer* (1979), 75 Ill. App. 3d 1036, 394 N.E.2d 746.) If fair-minded persons could draw different inferences from the facts, a triable issue exists and a motion for summary judgment must be denied. (*Riley*, 75 Ill. App. 3d 1036, 394 N.E.2d 746.) It is only when the undisputed facts are susceptible of but a single inference that the issue becomes one of law. (*Riley*, 75 Ill. App. 3d 1036, 394 N.E.2d 746.) Although there is no dispute in the evidence, if reasonable persons could draw different conclusions from the undisputed evidence, summary judgment should not be entered. (*Martin v. Hertz Corp.* (1982), 104 Ill. App. 3d 592, 432 N.E.2d 1262.) If the court is presented with any set of facts about which reasonable men might disagree, summary judgment should be denied. (*Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 344 N.E.2d 29.) The right of a moving party to obtain a summary judgment must be clear and free

from doubt. (*Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.) The purpose of a summary judgment proceeding is not to try an issue of fact but, rather, to determine whether there is an issue of fact to be tried. (*Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 436 N.E.2d 598.) The summary judgment procedure may not be used to try any issue; it is not a modified trial procedure. (*Manahan*, 50 Ill. App. 3d 9, 365 N.E.2d 1045.) The function of a jury is to decide disputed issues of fact. (*Diversey Liquidating Corp. v. Neunkirchen* (1939), 370 Ill. 523, 19 N.E.2d 363.) Where no such issue is presented, there can be no denial of the right to a jury trial. *Diversey*, 370 Ill. 523, 19 N.E.2d 363.

In her motion for summary judgment, the plaintiff asserted that "[t]here is no legitimate defense that has been or can be raised by Defendant as to the effect of the certificate of deposit they have admittedly issued. There is no competent evidence supporting Defendant's contention the certificate of deposit was issued in error or that it was issued without any consideration."

It is undisputed that on March 31, 1987, the defendant issued a one-year certificate, a copy of which is attached as exhibit "A" to both the plaintiff's complaint and her motion for summary judgment, in the name of Virginia I. Craig, specifying an opening balance of $21,000 with an initial rate of earnings of 5.93% per annum and an initial maturity date of March 31, 1988. The account number appearing on the certificate is 66—80—0000009. On the back of the certificate is the statement, "This certifies that the Accountholder holds a savings account with the terms as shown herein in Citicorp Savings." Also attached to the plaintiff's motion for summary judgment is the discovery deposition of David C. White, who stated that at the time in question he worked for the defendant, opening new accounts, and that the signature on the certificate is undisputedly his. He had known the plaintiff, he said, "probably 25 years." She had purchased certificates of deposit in the past and at times, if she were out of town, had them mailed to her. Apparently, the day before the plaintiff sought payment on the certificate, the account had been paid out to customers of the bank named Vernon and Anna Deadmond. David White stated that an account number established on the computer in the name of Vernon Deadmond corresponded to that on the certificate in plaintiff's name. In the motion for summary judgment, the plaintiff maintained, in reliance upon *First National Bank v. Myers* (1876), 83 Ill. 507, that a certificate of deposit is evidence of so high and satisfactory a character as to the sum deposited that, to escape its effect, the maker must overcome it by clear and convincing evidence. The plaintiff took the position that the defendant could not meet this burden

and that there was no genuine issue of material fact precluding entry of summary judgment in her favor.

In its response to the plaintiff's motion for summary judgment, the defendant admitted that the plaintiff's case was based upon a failure to pay a certificate of deposit issued by the defendant. The defendant denied that no legitimate defense has been or even can be raised "as I.R.S. Ch. 17, Sec. 610 and Ch. 110, Sec. 613(d) provide for defenses of lack of consideration and Exhibits B-E all support such a defense and it is a question for the jury as to whether such evidence is clear and convincing."

Exhibit "A" of the defendant's response consisted of certain pages of the plaintiff's discovery deposition taken on July 21, 1988, in which she stated that "[n]ot to this date" had she found statements pertaining to the account in question. She did recall having been in the defendant's bank on March 31, 1987, but had no specific recollection of depositing $21,000 with the defendant on that day. Asked, "Do you recall signing any new account forms to open an account on March 31 of 1987?" the plaintiff answered, "I am not sure." Asked further, "Now you said there should be a canceled check. Have you found a canceled check for this $21,000?" the plaintiff responded, "Not at this point in time." Plaintiff stated that she might have "walked in with part of" $21,000 in cash to open the account but "not that much." Queried further, "As you sit here today, do you have any documentation whatsoever from any source as to the nature of the funds that went into this CD allegedly on March 31 of '87?" the plaintiff answered, "Not at this time."

Exhibit "B" attached to the defendant's response contained certain pages of David White's discovery deposition, also taken on July 21, 1988, in which he stated that he had not found a deposit slip or his copy of a receipt for money given or received by the plaintiff. He said that he had searched for records in an attempt to locate the plaintiff's money for the certificate but had never found anything.

Exhibit "C" attached to the defendant's response was comprised of pages of the discovery deposition of Janet Conant, one of defendant's employees, taken on January 11, 1989. This witness stated that she had done "[e]xtensive checking" concerning this matter, specifically that "[w]e checked through our CRT. We checked in the fiche. We checked in all of our bank records. We checked for signature cards. We checked for, you know, account sheets. We checked for deposit tickets, for the check that she supposedly would have brought in to open this account." The witness said that a search of the computer records had been made. No indication of the existence of the certificate in question had been found. A search of the plaintiff's bank accounts had been made in an attempt

"to look through her history to see if there was anything that corresponded with this amount, this time frame, anything that we could place, you know, that could be this certificate," including "[a]ny check that she brought in, any money that she brought in, any certificate that, perhaps, matured and she might have renewed, anything that we could find." No records were found of plaintiff's "bringing that money in" or of the issuance of the certificate. Normally, the witness said, copies are kept when a certificate of deposit is issued, but none were found pertaining to the certificate in question.

Exhibit "D" of defendant's response consisted of certain pages of the discovery deposition of Marlis Neilson, another of defendant's employees, taken on January 11, 1989. This witness stated that the investigation conducted after the plaintiff had presented the certificate of deposit yielded nothing "whatsoever" of significance that would have indicated that plaintiff had deposited the money and nothing that was inconsistent with the Deadmonds' having deposited the money. To the knowledge of the witness, nothing had been "lost" once it was entered in the computer. The witness considered the investigation conducted to have been as thorough as it could possibly have been.

Exhibit "E" of the defendant's response was comprised of some pages of the discovery deposition of Mary Beck, another of defendant's employees, taken on July 21, 1988. She described the search conducted concerning the certificate: "A search of the account numbers that were—of the new account forms that were issued during that time. We went through all new account forms that we have within that timeframe [sic] within the organization." A new account form for the certificate of deposit was not found, nor was a signature card. No other form at all, she said, was found. The witness stated that Mrs. Conant "pulled the— as is our custom, she pulled the account number up, and it showed—had a zero balance, and she pulled up a name and address inquiry showing it in someone else's name."

As part of its response to the plaintiff's request to produce, the defendant provided copies of statements pertaining to Vernon and Anna Deadmond's account bearing the number 66—80—0000009. One such statement, bearing the date of April 15, 1986, indicates that on March 31, 1986, a deposit of $21,000 was made by the Deadmonds with a maturity date stated as March 31, 1987. A statement bearing the date of April 16, 1987, indicates that on March 31, 1987, a certificate of deposit in the amount of $21,000 was renewed by the Deadmonds with a new maturity date of March 31, 1988. The Deadmonds appear on March 31, 1987, to have withdrawn the amount of interest earned on that account during the preceding year.

At the hearing on the defendant's motion to reconsider the granting of summary judgment, the trial court concluded as follows:

"I feel very comfortable in denying the Motion to Reconsider. If anyone should have to prove the negative here, it should not be the Plaintiff. It should be the Defendant. Yes, this is to some extent an evidentiary finding, but what I'm finding is that the lack of evidence of the deposit in the bank's internal bookkeeping is not sufficient and under no circumstances could it be, even if consistant [sic] through out [sic] the bank and all of it's [sic] various metods [sic] of record keeping could it be sufficient to overcome the presumption that that money was deposited and when it did issue that certificate of deposit until or unless it is able to prove that there is no consideration at the counter when the C.D. was issued, and there is no evidence of that.

So, I do find, and proceed to continue to find, that there was no triable issue of any substantive fact in this case, that the C.D. was legitimately issued, and that it was due when presented, and Summary Judgment on Count 1 remains."

■■ We think that the instant record reveals the existence of a genuine issue as to a material fact, that concerning consideration. The facts included in this record plainly admit of more than one conclusion, including one unfavorable to the plaintiff movant, and, therefore, cannot support her motion for summary judgment. Certainly fair-minded and reasonable persons could draw different inferences and conclusions from these facts. Hence, a triable issue exists. Thus, the motion for summary judgment should not have been granted, and we accordingly reverse the judgment and remand the cause for further proceedings.

Because of the disposition we make concerning the trial court's granting of the plaintiff's motion for summary judgment, we need not address the defendant's contentions concerning procedural matters related to the granting of that motion.

We turn to the plaintiff's cross-appeal, in which she asks us to determine whether the trial court erred in dismissing the second count of her complaint, that is, for conversion. A proper complaint for conversion should allege (1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the personalty of another; (2) his right in the property; (3) his right to the immediate possession of the property, absolute and unconditional; and (4) a demand for possession thereof. *Mid-America Fire & Marine Insurance Co. v. Middleton* (1984), 127 Ill. App. 3d 887, 468 N.E.2d 1335.

■■ In count II of her complaint the plaintiff alleged that the defendant had issued the certificate of deposit to her, a copy of which

was attached to and made a part of the complaint as exhibit "A." At the hearing conducted on September 5, 1989, on the defendant's motion to reconsider the denial of its previous motion to dismiss count II, the trial court indicated that to allege properly the element of the defendant's control over her personal property the plaintiff needed to allege "the delivery of the monies to the bank":

"I think you need to plead that she delivered to the bank twenty-one thousand dollars because your action is for the money. The tort of converting the money. It is not for their failure to pay the note. I'm just really troubled by your just going in on the failure to pay the note and asking for punitive damages. *** I think here in Illinois you need to plead the delivery of the money to the bank too for there to be a cause of action for conversion for which you might receive punitive damages."

The trial court concluded as follows:

"I am going to rule on this now that that note [certificate] is evidence that you made the deposit and that is what that case says and every other case that you have told me, but you haven't plead [sic] that you made the deposit and I think you need to plead for the tort of conversion that you made the deposit and then at trial when you are called to prove that element you whip out this note and say here is the evidence that we made the deposit because for the conversion action that could maybe fall either way. I am trying to think what the appellate court is going to look at here, and I think it needs to be distinguished from the contract action. I think you need to plead the deposit of twenty-one thousand dollars at trial. Maybe that will be your only evidence, and it is a good presumption. I understand it is a real fine presumption and that is probably why I let it slide last time, but I think you need to amend that initial element of conversion that you deposited twenty-one thousand dollars."

We note that the only relevant difference, aside from the respective prayers for relief, between the plaintiff's amended count I for wrongful dishonor and her count II for the tort of conversion is the addition in count II of the following two paragraphs:

"7. That Defendant, Citicorp Savings, by and through its agents or employees, has acknowledged the authenticity of the certificate of deposit, and acknowledged that said certificate was issued by Defendant to the Plaintiff, Virginia I. Craig.

8. That Defendant, Citicorp Savings, has wilfully and maliciously disregarded their obligation to pay Plaintiff, Virginia I. Craig, the principle [sic] and interest due her by reason of the

certificate of deposit attached hereto, and has ignored and disregarded the demands for payment of said certificate made by Plaintiff."

The six remaining allegations of the count for conversion, which are identical to the six pertinent allegations of the count pertaining to the contract action, state as follows:

"1. At all times mentioned herein the Plaintiff, Virginia Craig, is a resident of Alma, Marion County, Illinois.

2. At all times mentioned herein, the Defendant, Citicorp Savings, a Federal Savings and Loan Association, is doing business in Kinmundy, Marion County, Illinois.

3. On or about March 31, 1987, the Defendant, Citicorp Savings, issued a certain certificate of deposit to the Plaintiff, Virginia I. Craig, in the amount of Twenty-one thousand Dollars ($21,000.00), bearing interest at the rate of 5.93% per annum compounded daily. A copy of said certificate is attached hereto as Exhibit 'A' and made a part hereof.

4. Said certificate matured on March 31, 1988.

5. The Plaintiff, Virginia I. Craig, has presented the certificate of deposit to Defendant, Citicorp Savings, for payment and demand has been made upon defendant for full payment of the principle [sic] amount of Twenty-one thousand dollars ($21,000.00), plus the interest accrued and owing.

6. Defendant has refused and continues to refuse to make payment to the Plaintiff."

In her brief to this court the plaintiff maintains that the incorporation of the copy of the certificate in the complaint, together with the allegation that the certificate was issued by defendant to plaintiff, sufficiently alleges "her right to these funds." She argues that, by granting summary judgment with respect to the first count of her complaint, "the trial court has already determined plaintiff's right to the funds. To then hold that plaintiff must produce additional evidence of her right to the funds under Count II is inconsistent." However, we have held that plaintiff's motion for summary judgment was erroneously granted by the trial court. Hence, the argument is not well taken. While it is true, as the plaintiff asserts, that the presence of a cause of action in contract does not preclude an action based upon a tort where both causes of action arise out of the same situation (*Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75), the plaintiff is nevertheless obliged to plead the cause of action in tort sufficiently. The act alleged to be a conversion must be positive and

tortious but not necessarily wilful or corrupt; neither negligence nor a breach of contract, though it results in the loss of specific property, constitutes conversion. (*Burge v. Englewood Motor Car & Garage Co.* (1919), 213 Ill. App. 357.) We agree with the trial court that count II as written essentially alleges a wilful and malicious failure to make payment upon the certificate. Absent more, count II is insufficient to allege the tort of conversion. The trial court did not err in dismissing this count of the complaint.

The dismissal of count II of plaintiff's complaint is affirmed.

The summary judgment granted in favor of plaintiff on count I is reversed, and this cause is remanded for further proceedings.

Affirmed in part; reversed and remanded in part.

GOLDENHERSH, J., concurs.

JUSTICE CHAPMAN, concurring in part and dissenting in part:

I concur in the majority's decision that plaintiff's motion for summary judgment as to count I of plaintiff's complaint should not have been granted, and that this cause should be reversed and remanded for further proceedings. I disagree, however, with the majority's decision that count II fails to state a cause of action for conversion and, therefore, I dissent from that portion of its decision.

I begin by assuming that the trial court could, although it did not, have based its decision to dismiss count II on the grounds that a conversion will not lie where money is the chattel. While there are few cases dealing with the conversion of money, it has been held that money can be the subject of conversion. (See *Addante v. Pompilio* (1940), 303 Ill. App. 172, 25 N.E.2d 123.)

> "[T]he subject of conversion is required to be an identifiable object of property of which the plaintiff was wrongfully deprived. Money may be the subject of conversion, but it must be capable of being described as a specific chattel ***." (*In re Thebus* (1985), 108 Ill. 2d 255, 260, 483 N.E.2d 1258, 1260.)

Dean Prosser also provides guidance as to what may be the subject of conversion:

> "Any tangible chattel could be lost and found, and so could be converted. ***
>
> Intangible rights of all kinds could not be lost or found, and the original rule was that there could be no conversion of such property. *** The first relaxation of the rule was with respect to the conversion of a document in which intangible rights were

merged, so that the one became the symbol of the other—as in the case of a promissory note, a check, a bond, a bill of lading, or a stock certificate. This was then extended to include intangible rights to which a tangible object, converted by the defendant, was highly important—as in the case of a savings bank book, an insurance policy, a tax receipt, account books, or a receipted account. In all of these cases the conversion of the tangible thing was held to include conversion of the intangible rights, and to carry damages for it." (W. Keeton, Prosser & Keeton on Torts §15, at 90-91 (5th ed. 1984).)

In this case the certificate of deposit is obviously a tangible object similar to the insurance policy referred to by Prosser. A requisite for maintaining an action for conversion of money is that it must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use. *Thebus,* 108 Ill. 2d 255, 483 N.E.2d 1258.

While the majority does not expressly suggest that money held in a certificate of deposit may not be the subject of a conversion, the disposition curtails the plaintiff's right to plead a cause of action for conversion of money represented by a certificate of deposit. I agree with the majority that in order to plead a proper complaint for conversion one should allege (1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the personalty of another; (2) his right in the property; (3) his right to the immediate possession of the property, absolute and unconditional; and (4) a demand for possession thereof. (219 Ill. App. 3d at 147.) Count II of plaintiff's complaint pleads each of the four allegations. I do not believe it is necessary for plaintiff to allege "the delivery of the monies to the bank." The essence of conversion is not the method of the acquisition by the wrongdoer but a wrongful deprivation by the alleged wrongdoer. (*Andrews v. Mid-America Bank & Trust Co.* (1987), 152 Ill. App. 3d 139, 142, 503 N.E.2d 1120, 1122, citing *Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 932, 419 N.E.2d 578, 593.) Plaintiff has alleged a wrongful deprivation of the money held by defendant. It is not necessary for plaintiff to plead how the defendant acquired possession of the money.

I would find that the trial court erred in granting defendant's motion to dismiss count II.