THIRD DIVISION

December 31, 1997 

No. 1-96-2096

GERALD GUICE, )

) Appeal from the Circuit

Plaintiff-Appellant, ) Court of Cook County.

v. )

)

SENTINEL TECHNOLOGIES, INC., ) No. 94 L 06456

f/k/a SENTINEL COMPUTER SERVICES, )

INC., ) Honorable 

) Ian H. Levin,

) Judge Presiding.

Defendant-Appellee. )

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, Gerald Guice, filed a three-count amended complaint against defendant, Sentinel Technologies, Inc. (Sentinel), alleging tortious interference with a stock pledge agreement and conversion of a stock certificate evidencing the stock pledged.  Plaintiff also sought punitive damages in a separate count.  Plaintiff appeals from the section 2-615 dismissal of his second amended complaint.  See 735 ILCS 5/2-615 (West 1996).

Plaintiff's second amended complaint alleged that he co-founded Sentinel, an Illinois corporation, in 1982 with Dennis Hoelzer.  Prior to the filing of his complaint, plaintiff owned 51% of its outstanding stock.  The plaintiff alleged that in 1988, after "bad feelings and antipathy" developed between himself and Hoelzer, he agreed to a buy-out of his interests in Sentinel.

The plaintiff further alleged that, on or about September 25, 1989, after the buy-out, he made a personal loan to Ajay Joshi, a 10% shareholder of Sentinel.  In consideration for the loan, Joshi executed and delivered a secured demand note in the amount of $63,752.04.  The note was secured by a pledge of 6,075 shares of Sentinel stock which amounted to 6.5% of all issued and outstanding common stock in Sentinel.  Under the terms of the pledge agreement between Joshi and Guice, and for the purpose of allowing Guice to perfect his security interest in the pledged stock, Joshi agreed to deposit with Guice a stock certificate which was then in the possession of Sentinel.  The demand note and pledge agreement were attached to plaintiff's complaint.

The second amended complaint next alleged that Sentinel was advised of the pledge agreement and note and that several requests were made to Sentinel to turn over to Guice the stock certificate representing Joshi's shares of stock.  Specifically, the complaint alleged that "[a]t the time the Pledge Agreement was entered into" Guice's attorney called Sentinel's attorney to advise him of the stock pledge and to request that the stock be turned over.  The complaint also alleged that letters of direction were sent by Joshi to Sentinel on February 15 and March 13, 1991; that Guice's attorney sent Sentinel's attorney a letter on March 13, 1991 requesting delivery of the stock certificate; that Sentinel's president sent Joshi a letter on March 18, 1991 in which he stated that the February 15, 1991 notice to Sentinel "does not appear to be in compliance with the provisions of the [Stock Restriction] Agreement" and in which he requested "all documentation in connection with the pledge"; and that on May 6, 1991 Guice's attorney sent Sentinel's attorney copies of the pledge agreement and promissory note.  All of the aforementioned letters and documents were attached as exhibits to plaintiff's second amended complaint.

The plaintiff further alleged that the stock restriction agreement between Sentinel and Joshi did not prohibit Joshi's stock pledge; did not require that Joshi obtain the consent of the other shareholders of Sentinel; and only required notice of the pledge.  The plaintiff alleged that the notice requirements were complied with prior to Hoelzer's March 18, 1991 letter and that, if not fully satisfied then, were satisfied on May 6, 1991 when Sentinel was sent a copy of the pledge agreement and promissory note executed by Joshi.  The plaintiff further alleged that "despite the repeated demands of Plaintiff and Joshi, Sentinel "continued to refuse to deliver over to Plaintiff the Pledged Shares although they were not subject to any other lien, limitation or restriction on transfer."  According to the plaintiff's averment, Sentinel's failure to deliver the stock certificates "was intentionally designed to prevent Plaintiff from obtaining value for its security interest in the Pledged Shares."  The plaintiff alleged that he was in fact deprived of that value when thereafter Joshi became insolvent and filed a bankruptcy petition in February 1993 and was deprived of recognition as a secured creditor since he did not have the stock certificate in his possession.

With respect to his tortious interference count, Guice alleged that Sentinel "deliberately, intentionally and unjustifiably induced Joshi to breach the Pledge Agreement" with Guice by preventing the delivery of the pledge shares to Guice.  Guice alleged that Sentinel's actions were a "malicious and vindictive attempt by Hoelzer *** to punish Guice because of a prior business dispute."  Guice alleged that his lack of possession of the stock certificates relegated him to the status of an unsecured creditor resulting in negligible recovery from Joshi's bankruptcy estate.

Plaintiff's punitive damages count adopted the above-stated allegations and sought punitive damages based upon Sentinel's "malicious" refusal to honor the requests for the transfer of stock to Guice.  Plaintiff's conversion count also adopted those allegations and further alleged that Sentinel wrongfully and without legal justification maintained custody and possession of the pledged shares in contravention of plaintiff's immediate and absolute right to possession.  That count alleged that Sentinel's wrongful possession denied Guice his collateral and prevented him from obtaining value for his security interest in the pledged shares.

In its motion to dismiss and memorandum in support thereof, Sentinel argued, 
inter
 
alia
, that the tortious interference count of plaintiff's second amended complaint failed to allege with requisite particularity Sentinel's "refusal" to deliver the stock certificates and failed to allege plaintiff's right to immediate and unconditioned possession of the certificates.  Sentinel argued that the plaintiff was not entitled to possession of the certificates because, as stated in its March 18, 1991 letter, Joshi had not given Sentinel prior written notice of the stock pledge and was in violation of the Stock Restriction Agreement between Sentinel and Joshi, which also attached as an exhibit to plaintiff's complaint.  Sentinel further argued that the plaintiff could not establish an enforceable contract between Joshi and himself because their stock pledge agreement required that the stock certificates be deposited with Guice before execution of the agreement.

With respect to the punitive damages count, Sentinel argued that the plaintiff failed to allege facts to support his conclusory allegations of willful or wanton conduct.  It argued, 
inter
 
alia
, that the plaintiff's own allegations and exhibits showed that Sentinel's conduct was justified based on the lack of prior written notice and multiple citations to discover assets issued on Sentinel with respect to Joshi's stock.

As to plaintiff's conversion count, Sentinel argued that the complaint did not allege sufficient facts of an immediate, absolute and unconditional right to possession of the stock certificates.  Sentinel argued that the exhibits attached to the amended complaint showed that Sentinel had rightfully obtained possession of the certificates and that Joshi had not given timely notice prior to the pledge.  Sentinel also argued that the plaintiff failed to show his right to possession, rather than Joshi's right to possession and failed to show an affirmative refusal by Sentinel to turn over the stock.

To withstand a motion to dismiss, the complaint must allege facts setting forth the essential elements of a cause of action.  
E.g.
, 
Jones v. Eagle II
, 99 Ill. App. 3d 64, 424 N.E.2d 1253 (1981).  All well-pleaded facts in the complaint and those contained in exhibits made a part of the complaint are admitted and taken as true for purposes of the motion.  
E.g.
, 
Smith v. Prime Cable
, 276 Ill. App. 3d 843, 658 N.E.2d 1325 (1995); 
Evers v. Edward Hospital Ass'n
, 247 Ill. App. 3d 717, 617 N.E.2d 1211 (1993).  A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings which will entitle a plaintiff to recover.  
E.g.
, 
Zadrozny v. City Colleges of Chicago
, 220 Ill. App. 3d 290, 581 N.E.2d 44 (1991).

I.  Intentional Interference with Contract

To properly plead a cause of action for intentional interference with contract, a complaint must allege:  (1) the existence of a valid, enforceable contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional and unjustified inducement of the third party to breach the contract; (4) occurrence of a breach resulting from defendant's conduct; and (5) damages suffered by the plaintiff as a result of the breach.  
E.g.
, 
Ray Dancer, Inc. v. DMC Corp.
, 230 Ill. App. 3d 40, 594 N.E.2d 1344 (1992).  In the instant case, the parties disagree as to whether a valid, enforceable contract existed between Guice and Joshi.  They disagree as to whether the 1985 stock restriction agreement between Joshi and Sentinel prevented consummation of the stock pledge agreement in that it required Joshi to obtain the prior written consent of Sentinel to the stock pledge.  They also disagree as to whether the stock pledge agreement between Guice and Joshi was enforceable in the absence of actual transfer of the stock certificates to Guice at the time the pledge agreement was signed.

The stock restriction agreement, which was attached to plaintiff's complaint and which constitutes a part of the pleading (735 ILCS 5/606 (West 1994)), must be taken as true for purposes of a section 2-615 motion (
Evers
, 247 Ill. App. 3d 717, 617 N.E.2d 1211; 
Payne v. Mill Race Inn
, 152 Ill. App. 3d 269, 504 N.E.2d 193 (1987)).  The relevant provisions of that agreement state the following:

"2.1 
General Prohibition
.  Subject to the provisions of paragraph 2.8 hereof, a Shareholder shall not, without the prior written consent of all other Shareholders, assign, sell, pledge, encumber, give or otherwise transfer or alienate to any person *** or other entity, by whatever means, any Shares owned by him, except to the extent and in the manner hereinafter set forth.

 2.2  
Right of First Refusal - Company Offer
.  No voluntary transfer, except with prior written consent of all other Shareholders shall be made except pursuant to a bona fide offer as set forth in this Paragraph 2.2.  If a Shareholder receives a bona fide offer to purchase all or any portion of Shares from a bona fide prospective purchaser ("Bona Fide Offer"), and if he shall desire to sell or otherwise transfer his Shares in accordance with the terms of a Bona Fide Offer, he shall first make a written offer to the Company ***.  ***

 2.3  
Right of First Refusal - Shareholder Offer
.  In the event the Company either refuses the Company Offer or fails to respond in writing to the selling Shareholder within 10 days following service of the Company Offer, the selling Shareholder shall make a written offer to the remaining Shareholders ("Shareholder Offer") to sell the Shares ***.  ***

 2.8  
Pledges
.  If a Shareholder desires to pledge, encumber or otherwise transfer as collateral or security for any obligation *** any Shares at any time owned by him, subject to the terms and provisions of Article II herein, he shall state his desire to make the pledge in writing to the other Shareholders and the Company.  The pledgor-Shareholder's notice to the other Shareholders and the Company shall set forth the number of shares pledged, by class, and the name and principal business address of the pledgee.  The pledgor-Shareholder shall also give written notice to each of the other Shareholders and the Company of termination of the pledge of such Shares *** or the receipt by the pledgor-Shareholder of a notice from the pledgee of the latter's intention to foreclose, sell or otherwise resort to the pledged Shares toward the satisfaction of any of the pledgor-Shareholder's obligations to the pledgee.  The receipt by the pledgor-Shareholder of such a notice from the pledgee of the pledgee's intention to foreclose, sell or otherwise resort to the pledged Shares shall constitute an Involuntary Lifetime Transfer ***."

Article III of the stock restriction agreement provides procedures for involuntary lifetime transfers including the giving of notice to the company and the other shareholders.  The other shareholders and company have the option to purchase that portion of the shares necessary to satisfy the judgment or other indebtedness for which the involuntary lifetime transfer was suffered.  If not so purchased, the shares can be offered to any other purchaser who agrees to be bound by the stock restriction agreement.

Our review of these provisions leads us to conclude that Sentinel's prior written consent to Joshi's stock pledge was not required.  While paragraph 2.1, the general provisions, of the stock restriction agreement prohibits any assignment, sale, pledge or encumbrance of shares without the prior written consent of all other shareholders, it does so "[s]ubject to the provisions of paragraph 2.8."  Paragraph 2.8, which specifically relates to pledges, requires only that the pledgor-shareholder give written notice of the pledge to the other shareholders and the company.  Similar written notice is required when the pledgee seeks to foreclose or sell the pledged shares toward the satisfaction of the pledgor-shareholder's obligations.  That occurrence, which is treated as an involuntary lifetime transfer, requires that the other shareholders and the company be given the first opportunity to purchase the shares necessary to satisfy the pledgor's obligations.

A review of the stock restriction agreement shows an intent to restrict stock purchases.  Stock purchases, whether by voluntary or involuntary transfer, cannot occur unless the existing shareholders and the company are first given the opportunity to purchase the shares of stock being offered for sale.  As set forth in paragraph 2.2, no voluntary transfer to a bona fide prospective purchaser can occur unless the written consent of all other shareholders is first obtained.  That written consent evidences the intentions of the company and the other shareholders to forego any additional purchase of shares guaranteed to them by their rights of first refusal.  The requirement of prior written consent insures that the company and other shareholders can exercise their rights of first refusal before the stock is offered for sale to other persons.  It would make no sense, however, to require prior written consent to a pledge where the other shareholders do not have an obligation to make the loan underlying the pledge.  They need only be advised of the pledge and of any involuntary lifetime transfer triggered by the pledgee's subsequent foreclosure.  In the latter event, pursuant to the involuntary lifetime transfer provisions of the stock restriction agreement, discussed above, the other shareholders would be given the opportunity to exercise their rights of first refusal to purchase the shares necessary to satisfy the indebtedness of the pledgor before the stock is offered for sale to any other purchaser.  Thus, given the clear language and intent of the stock restriction agreement, Joshi was not required to obtain Sentinel's prior written consent to his stock pledge agreement with Guice.

Sentinel argues that the plaintiff waived his right to enforce the stock delivery requirement under his pledge agreement with Joshi.  Sentinel cites to the pledge agreement, attached as an exhibit to plaintiff's complaint, which required that Joshi deposit with Guice the stock certificate representing the pledged shares before execution of the pledge agreement.  Sentinel argues that since Guice did not acquire the certificates before executing that agreement, he waived that provision of the pledge agreement.  We disagree.

Waiver is an intentional relinquishment of a known right and can arise either expressly or by conduct inconsistent with an intent to enforce that right.  
E.g.
, 
Sexton v. Smith
, 112 Ill. 2d 187, 492 N.E.2d 1284 (1986); 
Wald v. Chicago Shippers Ass'n
, 175 Ill. App. 3d 607, 529 N.E.2d 1138 (1988).  Parties to a contract have the power to waive provisions placed in the contract for their benefit and such a waiver may be established by conduct indicating that strict compliance with the contractual provisions will not be required.  
Whalen v. K-Mart Corp.
, 166 Ill. App. 3d 339, 519 N.E.2d 991 (1988).  In order to determine the applicability of waiver, one must focus on the intent of the non-breaching party.  
Wald
, 175 Ill. App. 3d 607, 529 N.E.2d 1138; 
Whalen
, 166 Ill. App. 3d 339, 519 N.E.2d 991.

Here, the facts alleged in plaintiff's amended complaint and in the exhibits attached thereto do not establish that Guice waived his right to receipt of the stock certificates as collateral for his loan to Joshi.  While it is undeniable that Guice did not receive the certificates at the time of execution of the stock pledge agreement, as provided in that agreement, other conduct allegedly attributed to Guice shows a continuing intention to obtain possession of the stock certificates.  That conduct includes the alleged telephone call made by Guice's attorney to Sentinel's attorney requesting turn over of the certificate to Guice "at the time the Pledge Agreement was entered into" and letters dated March 13, 1991 and May 6, 1991 from Guice's attorney to Sentinel's attorney requesting delivery of the stock certificate.  While the oral communication would not satisfy Sentinel's right to written notice of the pledge, it certainly supports a contention that Guice intended to obtain the stock certificate and did not waive his right to that collateral.

Moreover, even if Guice's alleged conduct could be characterized as a waiver of his right to possession of the stock certificate, it is doubtful that Sentinel who was not a party to the stock pledge agreement could assert the defense of waiver by Guice.  Waiver of contractual rights cannot be asserted by third parties.  See 
Western Waterproofing Company v. Springfield Housing Authority
, 669 F. Supp. 901 (C.D. Ill. 1987).  Thus, Sentinel's waiver argument must fail.

Having concluded that plaintiff's second amended complaint adequately pled a valid and enforceable pledge agreement between Guice and Joshi, we next turn to the issue of whether the complaint sufficiently alleged that Sentinel intentionally and unjustifiably induced Joshi to breach the pledge agreement.  The plaintiff argues that his complaint is sufficient in that it alleges an unjustified refusal by Sentinel over a four-year period to turn over the stock certificate despite several requests and despite the fact that Sentinel was provided with notice as required by paragraph 2.8 of its stock restriction agreement.  Sentinel argues that the plaintiff's complaint was insufficient because it pled facts showing privilege and justification and failed to plead additional facts of actual malice or lack of justification.

In intentional interference with contract cases, a defendant's conduct is considered "privileged" if he acts to preserve a conflicting interest which the law deems to be of equal or greater value than the contractual rights at issue.  
HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.
, 131 Ill. 2d 145, 545 N.E.2d 672 (1989); 
Ray Dancer, Inc. v. DMC Corp.
, 230 Ill. App. 3d 40, 594 N.E.2d 1344 (1992); 
Philip I. Mappa Interests, Ltd. v. Kendle
, 196 Ill. App. 3d 703, 554 N.E.2d 1008 (1990).  In Illinois, where the conduct of a defendant in an interference with contract action is privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified and malicious.  
HPI Health Care Services
, 131 Ill. 2d 145, 545 N.E.2d 672; 
Kendle
, 196 Ill. App. 3d 703, 554 N.E.2d 1008.  Allegations of actual malice must show that the defendant acted with a desire to harm and engaged in conduct totally unrelated to the property interest that gave rise to the privilege.  
HPI Health Care Services
, 131 Ill. 2d 145, 545 N.E.2d 672; 
Ray Dancer, Inc.
, 230 Ill. App. 3d 40, 594 N.E.2d 1344; 
Kendle
, 196 Ill. App. 3d 703, 554 N.E.2d 1008.

Here, the plaintiff's complaint set forth facts that would establish that Sentinel's acts were privileged at least during the period of 1989 until May, 1991 when all documents relative to the stock pledge agreement between Joshi and Guice were provided to Sentinel.  As set forth in paragraph 2.8 of the stock restriction agreement between Sentinel and Joshi, Sentinel and its shareholders were entitled to written notice of the pledge agreement including information regarding the number of shares pledged, by class, and the name and principal business address of the pledgee.  It cannot be disputed that Sentinel and its shareholders had a right to be assured that the pledge was not a sale so as to protect their rights of first refusal with respect to voluntary and involuntary transfers involving the sale of Sentinel's stock.  See 
HPI Health Care Services
, 131 Ill. 2d 145, 545 N.E.2d 672; 
Kendle
, 196 Ill. App. 3d 703, 554 N.E.2d 1008.  Since paragraph 2.8 required written notice of a pledge, plaintiff's oral notification to Sentinel that allegedly occurred "[a]t the time the Pledge Agreement was entered into" would not satisfy that requirement.  As a result, Sentinel's acts in refusing to deliver the stock certificate at that time were privileged.

For similar reasons, we find that Sentinel's failure to deliver the stock certificate in February and March 1991 was privileged.  According to the plaintiff's amended complaint and exhibits attached thereto, letters of direction were sent by Joshi on February 14, 1991 and March 13, 1991 to Sentinel and its shareholders requesting that a stock certificate be issued to Guice based upon Joshi's stock pledge to Guice.  Attached to the February 14, 1991 letter was a copy of a "Notice" purportedly executed by Joshi on June 1, 1990 indicating that Joshi had pledged 6,075 shares of his common stock to Guice.  (Plaintiff's complaint did not allege that this "Notice" had been sent to or received by Sentinel and its shareholders in June 1990.)  Joshi's March 13 letter was sent to Sentinel's attorney with a second letter from Guice's attorney, also dated March 13, 1991.  The latter letter requested delivery of the stock certificate to Guice's attorney based upon the fact that a lien on Joshi's stock entered pursuant to a legal action filed against Joshi in 1990 had been vacated.  Sentinel's president, Dennis Hoelzer, responded to Joshi's March 13, 1991 letter on March 18, 1991.  He requested "all documentation in connection with the pledge" in order to "fully understand the facts and circumstances of the pledge and the rights of the various parties" to the pledge agreement.  As discussed above, such a request was reasonable given Sentinel's and its shareholders' ownership interests and protectible rights with respect to stock transfers and sales.  This correspondence, attached to plaintiff's amended complaint, negates plaintiff's averment that Sentinel's refusal to turn over the stock certificate was unjustified.  See 
Evers v. Edward Hospital Ass'n
, 247 Ill. App. 3d 717, 617 N.E.2d 1211 (1993); 
Waller v. Davis (In re Estate of Davis)
, 225 Ill. App. 3d 998, 589 N.E.2d 154 (1992) (exhibit which is inconsistent with averments negates those averments)).  It also establishes that Sentinel's conduct in failing to deliver the stock certificate, at least through the period of May 6, 1991 when Guice's attorney provided the requested stock pledge documentation, was privileged.

Given the existence of a privilege through the period of May 6, 1991, plaintiff's amended complaint could not state a cause of action for intentional interference with contract unless it alleged actual malice.  
HPI Health Care Services
, 131 Ill. 2d 145, 545 N.E.2d 672; 
Kendle
, 196 Ill. App. 3d 703, 554 N.E.2d 1008.  An allegation of actual malice to overcome a defendant's privilege to interfere must show that the defendant acted with a desire to harm which is independent of and unrelated to the defense of the property interest that he is trying to protect.  
HPI Health Care Services
, 131 Ill. 2d 145, 545 N.E.2d 672; 
Ray Dancer, Inc.
, 230 Ill. App. 3d 40, 594 N.E.2d 1344; 
Kendle
, 196 Ill. App. 3d 703, 554 N.E.2d 1008.  The plaintiff's amended complaint in the instant case is devoid of any such allegations.  As previously discussed, that complaint establishes Sentinel's right to notice of the stock pledge and its right to be assured that a stock pledge and not a stock purchase is the transaction necessitating the delivery of the stock certificate.  Sentinel actions, at least until May 6, 1991, directly related to its efforts to protect its interests and those of its other shareholders in the stock ownership of the company.  Sentinel was not required to deliver the stock certificate until it was assured that the transfer was made pursuant to a pledge and not a sale.

The period of May 6, 1991 through December 4, 1991, when Joshi's shares of stock were not subject to any lien,
(footnote: 1) requires a different conclusion.  There are no facts alleged in the plaintiff's complaint which would justify Sentinel's failure to deliver the stock certificate after May 6, 1991.  On that date, Sentinel allegedly had the documentation necessary to assure itself and its other shareholders that Joshi had entered into a valid stock pledge agreement seeking to pledge his Sentinel common stock as collateral for a loan made to him by Guice.  Nothing else is alleged which would suggest that Sentinel's failure to act upon the May 6, 1991 request for delivery of the stock certificate was privileged; and, as a result, the plaintiff was not required to plead actual malice.  See generally Prosser & Keeton, Torts §15, at 100 (5th ed. 1984) (after reasonable time for investigation "defendant is required to make up his mind and becomes liable as a converter if he refuses to deliver to the rightful claimants).

The plaintiff was, however, required to plead facts showing intentional interference with contract.  He argues that he did so with allegations that Sentinel voiced no objection to the pledge agreement and after all notice provisions of the stock restriction agreement were complied with "continued to refuse to deliver over to Plaintiff the Pledged Shares although they were not subject to any lien, limitation or restriction on transfer."  Sentinel responds that the communications alleged to have occurred from Sentinel could not be characterized as a "refusal."  Sentinel may be correct that the only communication from Sentinel, the March 18, 1991 letter from Sentinel's president, could not be viewed as a refusal since it requested copies of the documents evidencing Joshi's stock pledge.  However, that fact does not negate plaintiff's further allegation that after receiving the documents, Sentinel did not deliver the stock certificate to Guice.  This alleged failure to deliver supports plaintiff's allegation of refusal to deliver, at least at the pleading stage.  Moreover, allegations that the failure to deliver occurred despite the permissibility of stock pledges and despite compliance with all the prerequisites for such pledges, factually suffices as an allegation of intentional interference.  Of course, if Sentinel can plead and prove the existence of other unfulfilled prerequisites or other legitimate and protectible interests or that its failure to deliver was negligent rather than intentional, plaintiff's cause of action could later fail on those grounds.

Sentinel argues that the plaintiff's amended complaint did not adequately allege that Sentinel's conduct caused plaintiff to suffer damages.  In support of this contention, Sentinel cites to plaintiff's allegation that "as a result of the execution of the Pledge Agreement by Joshi, his assignment of his stock, and the notice provided to Sentinel, Plaintiff held a perfected security interest."  According to Sentinel, if, as the plaintiff alleges, Guice perfected his security interest, then the plaintiff suffered no damages.  We disagree.  While Sentinel is correct that one paragraph of the amended complaint alleged that plaintiff held a perfected security interest, when the complaint is viewed in its entirety, no such conclusion can be made.  In accordance with the provisions of the Uniform Commercial Code (810 ILCS 5/1-101 
et
 
seq
. (West 1996)), which were cited in plaintiff's complaint, a creditor cannot perfect his security interest in stock without having possession of the collateral.  810 ILCS 5/8-321 (West 1996).  Moreover, it is readily apparent from a reading of plaintiff's entire complaint that the plaintiff did not have a perfected security interest because he did not have possession of the stock certificate due to Sentinel's failure to deliver the stock certificate to him.  That lack of a perfected security interest resulted in Guice's being denied secured creditor status by the trustee of Joshi's bankruptcy estate.  Thus, a causal connection between Sentinel's conduct and Guice's injury was sufficiently alleged.

Finally, Sentinel contends that plaintiff's amended complaint was insufficient in that it did not allege Sentinel's knowledge of the pledge agreement.  Specifically, Sentinel argues that its knowledge was premised on "belated 'notice'" of the pledge agreement delivered in writing to Sentinel in the Spring of 1991, more than one and one-half years after the pledge agreement was executed.  First, we note that Sentinel has waived any argument in this regard by failing to cite authority in support thereof.  155 Ill. 2d R. 341(e)(7), (f) ("[a]rgument shall contain citation of the authorities").  See 
Vernon Hills III Limited Partnership v. St. Paul Fire & Marine Insurance Co.
, 287 Ill. App. 3d 303, 678 N.E.2d 374 (1997); 
Bank of Illinois v. Thweatt
, 258 Ill. App. 3d 349, 630 N.E.2d 121 (1994).  Second, we would reject Sentinel's argument on its merits since, for purposes of setting forth a cause of action for intentional interference with contract, the plaintiff must only allege knowledge by Sentinel of the pledge agreement.  The date upon which that knowledge was acquired by Sentinel is irrelevant provided acquisition of that knowledge preceded the alleged conduct of interference.  As discussed above, the only period of time with which an intentional interference with contract claim can be lodged by the plaintiff against Sentinel is that period occurring after Sentinel received the documentation evidencing the Joshi's stock pledge agreement with Guice, namely after May 6, 1991.

II.  Punitive Damages

The plaintiff next argues that his punitive damages count (count II) should not have been dismissed on the basis that it did not set forth an independent cause of action.  The plaintiff concedes that punitive damages represents a type of relief and not a cause of action.  See 
McGrew v. Heinold Commodities, Inc.
, 147 Ill. App. 3d 104, 497 N.E.2d 424 (1986).  He also concedes that his count II does not set forth a separate cause of action but merely seeks additional relief premised on additional acts of misconduct, from the relief sought and the acts pled in count I.  Plaintiff's count II pleads a cause of action for intentional interference with contract by incorporating count I into count II and seeks additional relief based on the additional allegation of malice.

Regardless of the question of the formal pleading requirements with respect to punitive damages, the dismissal of the punitive damages count is warranted here because the allegations insufficiently plead entitlement to such damages.  Plaintiff's sole allegation which could support a punitive damages award is that Sentinel's "refusal to honor the request for transfer of stock to Plaintiff was malicious and purposely done with intent to harm Guice who Sentinel was forced to buy-out on terms not necessarily favorable to Defendant."  This allegation is conclusory and does not sufficiently allege wrongful conduct that would entitle one to an award of punitive damages.  Instead it presents a bare assertion of malice without supporting factual allegations.  See 
HPI Health Care
, 131 Ill. 2d 145, 545 N.E.2d 672 (finding allegation of actual malice to be conclusory and factually insufficient).  In order to be entitled to punitive damages, one must allege outrageous conduct, acts perpetrated by evil motive or with reckless indifference to the rights of others.  
Reuben H. Donnelley Corp. v. Brauer
, 275 Ill. App. 3d 300, 655 N.E.2d 1162 (1995).  See 
Duignan v. Lincoln Towers Insurance Agency, Inc.
, 282 Ill. App. 3d 262, 667 N.E.2d 608 (1996).  Punitive damages should not be awarded if the defendant's misconduct is not above and beyond the conduct needed for the basis of the underlying cause of action.  
Parsons v. Winter
, 142 Ill. App. 3d 354, 491 N.E.2d 1236 (1986).  Here, the only allegation that would suggest evil motive is that Sentinel was perhaps acting vengefully because it was forced to buy-out Guice on terms not necessarily favorable to Sentinel.  However, as was earlier alleged, the buy-out occurred one year before execution of the pledge agreement by Guice and Joshi.  Moreover, no specific facts were alleged to suggest how the buy-out was "less than favorable" to Sentinel.  Absent any such further allegations, plaintiff has not sufficiently pled a cause of action upon which punitive damages can be awarded.  See 
Wait v. First Midwest Bank
, 142 Ill. App. 3d 703, 710, 491 N.E.2d 795, 802 (1986) ("[t]he mere addition of the phrase 'willful and wanton' *** is insufficient to allege reckless misconduct necessary to support an allowance of punitive damages").

III.  Conversion

Plaintiff's conversion count alleged that Guice was entitled to possession and custody of the pledged shares and that Sentinel, wrongfully and without legal justification, maintained custody and possession of the pledged shares in contravention of plaintiff's immediate and absolute right to possession of the pledged shares.  Plaintiff further alleged that he was damaged by the wrongful possession in that he was denied the collateral to which he was otherwise entitled which prevented him from obtaining value for his security interest in the pledged shares.

To properly plead a cause of action for conversion, one must allege:  (1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over the property of plaintiff; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property, absolute or conditional; and (4) demand by plaintiff for possession of the property.  
E.g.
, 
Fonda v. General Casualty Co.
, 279 Ill. App. 3d 894, 665 N.E.2d 439 (1996); 
Craig v. Citicorp
 Savings
, 219 Ill. App. 3d 142, 578 N.E.2d 1331 (1991).  Where the defendant has rightfully acquired the property, then demand for the property and refusal to return must be alleged.  
Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.
, 2 Ill. App. 3d 978, 276 N.E.2d 89 (1971).

On appeal, the plaintiff argues that his amended complaint properly pled his right to possession of the stock certificate and his demand and notice to Sentinel.  He cites to several of his general allegations which were realleged and incorporated into his conversion count, particularly his allegation that "[a]t the time the Pledge Agreement was entered into Plaintiff advised Sentinel of the existence of the Note and Pledge Agreement."  Plaintiff also cites to his allegations concerning the exchange of written correspondence between Sentinel, Joshi and himself during the period of February 15, 1991 and May 6, 1991 and his further allegation that Sentinel's refusal to deliver the stock certificate was unjustified.

As discussed above with respect to plaintiff's intentional interference with contract count, the oral notice alleged to have been given Sentinel "[a]t the time the Pledge Agreement was entered into" did not entitle plaintiff to possession of the stock certificate because it did not comply with the stock restriction agreement's requirement for written notice of the pledge.  As also discussed above, the subsequent written communications to Sentinel in February and March 1991 were insufficient in that they lacked transmittal of the documentation surrounding the pledge agreement between Joshi and Guice which Sentinel was justified in requesting.  However, as further discussed, it would appear from the allegations in the complaint and from the exhibits attached thereto that Sentinel had no further right to withhold the stock certificate once that documentation was sent to Sentinel on May 6, 1991 and until December 4, 1991, when Joshi's stock became the subject of another legal proceeding thereby preventing Sentinel from taking any action thereafter with respect to Joshi's stock.  Thus, as to the period of May 6, 1991 and December 4, 1991, the plaintiff has set forth sufficient allegations showing a right to possession of the stock certificate pursuant to a pledge agreement between Joshi and himself; demand and proper notice to Sentinel of the pledge agreement; a right to immediate possession having satisfied the notice requirement in the stock restriction agreement; and wrongful possession after demand and proper notice.

The defendant argues, without citation to authority (see 155 Ill. 2d R. 341(e)(7)) that the plaintiff cannot maintain an action for conversion because he is not the owner of the stock.  Defendant's argument is baseless.  Under general tort principles, a conversion action can be brought by any person who has the right to immediate possession of property regardless of whether that person owns the property.  See 
Fonda
, 279 Ill. App. 3d 894, 665 N.E.2d 439 (wherein assignee of creditor with security interest in debtor's office equipment brought conversion action against insurance company for wrongful payment of insurance proceeds to debtor after fire loss to property).  See generally, Restatement (Second) of Torts §225 (1965) (converter is liable to one who at the time is entitled to possession of the chattel); 18 Am. Jur. 2d 
Conversion
 §75, at 197 (1985) (the person bringing a conversion action may be the owner of the property or one entitled to possession), §63, at 188 (action for conversion may be maintained by a person entitled to promissory note although legal title to note and right to sue for money due thereon are in another); W. Keeton, Prosser & Keeton on Torts §15 at 104 (5th ed. 1984) ("the common law has been extended to permit recovery by one who had the immediate right to possession, as in the case of a bailor entitled to possession on demand, or a chattel mortgagee or conditional seller after default").  Since the plaintiff can maintain an action for conversion and since we have held that the plaintiff's amended complaint sufficiently pled the elements of that action, in so far as it alleged a right to possession and a wrongful and unjustified failure to deliver the stock certificate during the period of May 6, 1991 to December 4, 1991, the trial court erred in dismissing that count.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is reversed and remanded for further proceedings.

Reversed and remanded.

COUSINS, P.J. and LEAVITT, J., concur.

FOOTNOTES
1:
The plaintiff seems to concede that Sentinel could not deliver the stock certificate after December 4, 1991 and until September 23, 1992 when Joshi's stock was the subject of another legal proceeding.  According to exhibits attached to plaintiff's first amended complaint, the trial court in that action denied that plaintiff's request for a turn over order of Joshi's Sentinel stock finding that Guice, who intervened in that action, had a superior interest to the stock.