In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1850

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

REFUGIO RUIZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CR 493 Rebecca R. Pallmeyer, Judge.

ARGUED OCTOBER 27, 2000--DECIDED May 2, 2001


Before EASTERBROOK, KANNE, and ROVNER,
Circuit Judges.

ROVNER, Circuit Judge. Refugio Ruiz was arrested after police officer Glen Lewellen observed him carrying a bag filled with 10 kilograms of cocaine to a waiting car. A jury convicted him of possessing cocaine with the intent todistribute. Ruiz contends that the district court erred when it permitted Lewellen's partner to recount Lewellen's contemporaneous descriptions, via a walkie-talkie, of Ruiz and the actions he saw Ruiz take on the night of his arrest. Ruiz also contends that the court improperly enhanced his sentencing level based on his failure to disclose some of his prior arrests to the probation officer. We affirm Ruiz's conviction and sentence.

I.

On July 8, 1999, officers Glen Lewellen and Noel Sanchez, assigned to the narcotics section of the Chicago Police Department's organized crime division, received a tip that narcotics trafficking was occurring at an apartment house in the southwestern suburb of Aurora. That afternoon, Lewellen and Sanchez set up surveillance outside the house. Lewellen parked his unmarked car 450 to 500 feet

away from the back of the building and trained his high-powered binoculars on the rear entrance; Sanchez covered the front and side. The two kept in contact by way of radio and walkie-talkies, reporting to one another any activity that they observed.

At approximately 4:30 p.m., Lewellen saw a van pull into the driveway adjacent to the building and drop off a Hispanic male, who subsequently entered the building through the rear doorway. Lewellen later identified this individual as Ruiz. Ruiz's shirt and pants were white. Over the next three hours, Lewellen saw Ruiz emerge from the building three times. On each occasion, Ruiz walked out onto the back porch of the building (and in one instance onto a nearby sidewalk), looked about for a moment or two, and then re-entered the building.

Shortly before 7:30, Lewellen saw a silver car with no license plates pull into the parking lot immediately behind the building and park with its trunk facing the back door of the building. Ruiz appeared on the back porch momentarily, motioned toward the car, and then re-entered the building. Sensing that a narcotics transaction was about to take place, Lewellen moved his vehicle closer to the building. After a few minutes, he saw Ruiz poke his head out of the rear doorway of the building and look around. Still looking to and fro, Ruiz then walked out onto the back porch and down the porch stairs toward the silver car carrying a large yellow bag that appeared to Lewellen to be heavy. Because their backup had not yet arrived, Lewellen and Sanchez had already agreed to break up the apparent transaction before it could be completed. Lewellen therefore drove his car into the lot and pulled up next to the silver automobile, directly in front of Ruiz. Ruiz dropped the bag and fled back into the building, and the silver car sped away from the lot.

The bag that Ruiz had abandoned turned out to contain some 10 kilograms of cocaine, with a street value of $1.25 million. Although the silver car was never located, Lewellen and Sanchez quickly found and arrested Ruiz in an apartment just inside of the building's

rear entrance. A consensual search of that apartment produced some $1,800 in cash, hidden within a vacuum cleaner. No drugs, drug paraphernalia, or other signs of drug trafficking were found in Ruiz's apartment, however. After the search of Ruiz's apartment was completed, police also knocked on the doors of each of the other apartments in the building and obtained the occupants' consent to search the premises. They discovered no one else who matched the description of the person Lewellen had seen carrying the cocaine-laden bag to the silver automobile.

A grand jury charged Ruiz with possessing cocaine with the intent to distribute, in violation of 21 U.S.C. sec. 841(a)(1). At trial, Lewellen described the actions he had seen Ruiz take on the afternoon and evening in question. Over Ruiz's objection, Judge Pallmeyer also permitted Sanchez to recount what Lewellen had relayed to him via radio and walkie-talkie regarding the appearance and conduct of Ruiz. The judge found Sanchez's testimony admissible under the present sense exception to the hearsay rule. See Fed. R. Evid. 803(1). Ruiz himself took the stand and testified that he was not the person that Lewellen had seen carrying the yellow bag of cocaine. The jury obviously believed otherwise, however, given that it convicted him of possession with intent to distribute.

In the course of his pre-sentence investigation, the probation officer asked Ruiz about previous arrests and convictions. Ruiz indicated, inter alia, that he had not been arrested in Utah. Subsequently, however, the probation officer determined that Ruiz had been arrested on multiple occasions in that state; at least one of these arrests had culminated in a conviction. Based on Ruiz's failure to disclose those arrests, Judge Pallmeyer enhanced Ruiz's offense level for obstruction of justice, pursuant to section 3C1.1 of the Sentencing Guidelines. R. 43-3, Sentencing Tr. 8-9. She ordered Ruiz to serve a prison term of 210 months (the low end of the Guidelines range). R. 35.

II.

A.

After Lewellen described for the jury the actions he had seen Ruiz take in the hours before his arrest, the government called Sanchez to the witness stand. Sanchez, who had been stationed in front of the apartment house, witnessed none of the events that Lewellen had seen take place in the rear of the building. But Lewellen had contemporaneously relayed to Sanchez via radio and walkie-talkie what he saw happening, and over Ruiz's hearsay objection, the district court allowed Sanchez to repeat some of Lewellen's statements. Sanchez repeated Lewellen's statements concerning, inter alia, Ruiz's appearance and clothing, Ruiz's conduct on one of the occasions when he walked out onto the back porch of the building, the arrival of the silver automobile, and the actions that Ruiz took after the silver car arrived. R. 43-1, Trial Tr. 94, 97-99. The government argued that Sanchez's testimony was admissible as a present sense impression, pursuant to Federal Rule of Evidence 803(1), and the court allowed the testimony on that basis. Ruiz contends that the testimony did not meet the criteria for this exception to the hearsay rule, and that in any event, the testimony was in reality offered as evidence of Lewellen's prior consistent statements for the purpose of bolstering his testimony.

Although Ruiz argues otherwise, we believe that Sanchez's testimony as to what Lewellen told him met the accepted criteria for present sense impression testimony./1 Rule 803(1) indicates that an out-of-court statement is not excludable as hearsay, whether or not the declarant is available to testify, if the statement "describ[es] or explain[s] an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Courts have agreed on three principal criteria for the admission of statements pursuant to this rule: (1) the statement must describe an event or condition without calculated narration; (2) the speaker must have personally perceived the event or condition described; and (3) the statement must have been made while the speaker was perceiving the event or condition, or immediately thereafter. See United States v. Mitchell, 145 F.3d 572, 576 (3d Cir. 1998); United States v. Portsmouth Paving Corp., 694 F.2d 312, 323 (4th Cir. 1982); United States v.

Campbell, 782 F. Supp. 1258, 1260 (N.D. Ill. 1991); see also 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence sec. 434, at 384-88 (2d ed. 1994). A statement that meets these requirements is generally regarded as trustworthy, because the "'substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication.'" United States v. Parker, 936 F.2d 950, 954 (7th Cir. 1991), quoting United States v. Blakey, 607 F.2d 779, 785 (7th Cir. 1979), overruled sub silentio on other grounds by Idaho v. Wright, 497 U.S. 805, 110 S. Ct. 3139 (1990). Lewellen's statements to Sanchez satisfy each of these criteria: he saw Ruiz and what Ruiz did, he repeated his observations to Sanchez, and he did so at the same time as, or shortly after, he made these observations. Moreover, although the rule does not require it, Lewellen himself testified, and was of course subject to cross-examination as to the substance of his observations.

  Ruiz suggests that Lewellen's statements to Sanchez do not qualify for admission as present sense impressions because Sanchez was not a disinterested party and because there was no independent corroboration of these statements, but we disagree. Sanchez's motivation as a witness presents a straightforward credibility question. If, as Ruiz suggests, Sanchez had an interest in bolstering his partner's story, then that interest was no more and no less pronounced with respect to the observations that Lewellen relayed to him than it was vis a vis anything else Sanchez said on the witness stand. The jury was free to give Sanchez's testimony such weight as it felt was appropriate. As for the second point, courts sometimes focus on the corroboration or the lack thereof in admitting or excluding present sense impressions, see Louisell & Mueller sec. 434 at 383 n.5 (collecting cases), but the truth is that the rule does not condition admissibility on the availability of corroboration. Id.; see also 2 John W. Strong, McCormick on Evidence sec. 271 at 203 & n.28 (5th ed. 1999)./2 The lack of another witness who could independently verify Lewellen's observations, like Sanchez's credibility, bore upon the weight owed to this evidence but did not bar its admission.

A more persuasive contention is that whether or not Lewellen's statements to Sanchez qualified as present sense impressions, the government actually elicited Sanchez's testimony concerning these statements in order to bolster Lewellen's credibility. At oral argument, the government conceded that Lewellen's statements to Sanchez were releant insofar as they confirmed what Lewellen recounted in his testimony. To that extent, the statements are perhaps most naturally analyzed as prior consistent statements rather than present sense impressions. See Fed.R.Evid. 801(d)(1)(B); but see also United States v. Andrews, 765 F.2d 1491, 1501-02 (11th Cir. 1985), cert. denied, 474 U.S. 1064, 106 S. Ct. 815 (1986) (analyzing the admissibility of a police officer's tape-recorded observations alternatively as present sense impressions and prior consistent statements).

We are satisfied, however, that Lewellen's statements also meet the criteria for prior consistent statements. A person's prior consistent statement is admissible for the purpose of rehabilitating his credibility, provided that (1) the declarant testifies at trial and is subject to cross-examination, (2) his prior statement is indeed consistent with this trial testimony, (3) the statement is offered to rebut an explicit or implicit accusation of recent fabrication, and (4) the statement was made before the declarant had a motive to fabricate. E.g., United States v. Stoecker, 215 F.3d 788, 791 (7th Cir. 2000), cert. denied, 121 S. Ct. 885 (2001), quoting United States v. Fulford, 980 F.2d 1110, 1114 (7th Cir. 1992). Each of these criteria is satisfied here. Lewellen testified at trial and was thoroughly cross-examined as to the subject of his observations. His statements to Sanchez were consistent with his testimony. The government elicited proof of those statements after Ruiz's counsel, in cross-examining Lewellen, raised the implication that Lewellen's testimony as to what he saw Ruiz do on the night of his arrest was fictional--for example, by pointing out that Lewellen had not noted in his post-incident report certain of the observations to which he testified. R. 43-1, Trial Tr. 71-74; see United States v. Cherry, 938 F.2d 748, 756 & n.12 (7th

Cir. 1991). Finally, Lewellen reported his observations to Sanchez while events were still unfolding, before the officers arrested Ruiz and long before Lewellen's credibility was put into question. See Andrews, 765 F.2d at 1501-02.

B.

Following Ruiz's conviction, the probation officer questioned him on two occasions on the subject of his criminal history. On the first occasion, Ruiz indicated that his criminal history included just one prior arrest in California for driving while intoxicated. The probation officer subsequently learned from the United States Probation Office in the Central District of California that Ruiz had a history of multiple arrests in that jurisdiction. When the probation officer later confronted Ruiz regarding the additional arrests, Ruiz acknowledged them but explained to the probation officer that he had not disclosed them himself because "you didn't ask." When first questioned, Ruiz also stated that he had not been arrested in Utah. Subsequently, however, the officer learned that Ruiz had also been arrested on multiple occasions in that state and convicted in at least one instance. Notwithstanding Ruiz's lack of candor as to his criminal history, the probation officer did not initially recommend that Ruiz's offense level be enhanced for obstruction of justice. After the government filed an objection, however, the officer revised his report to incorporate the enhancement./3 After hearing argu-ment, the district court found that Ruiz had indeed obstructed justice. The court noted that Ruiz had not simply withheld information about his prior arrests, but had gone so far as to affirmatively deny that he had been arrested in Utah when, in fact, he had been arrested in that state on multiple occasions. R. 43-3, Sentencing Tr. 8-9. We review that finding of fact for clear error. E.g., United States v. Craig, 178 F.3d 891, 900 (7th Cir. 1999).

We see nothing clearly erroneous in the district court's determination. The Guidelines call for the obstruction enhancement when the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the

investigation, prosecution, or sentencing of the instant offense of conviction[.]" sec. 3C1.1 (emphasis supplied). Although the Guidelines do not oblige the defendant to volunteer information to the probation officer, see section 3C1.1 Application Note 2, neither do they permit him to lie about his criminal record. Application Note 4(h) specifically recognizes that a defendant willfully obstructs justice within the meaning of the guideline when he gives "materially false information to a probation officer in respect to a presentence or other investigation for the court." See United States v. Thomas, 11 F.3d 1392, 1401 (7th Cir. 1993). Thomas recognizes that lies about one's arrest record in particular constitute obstruction of justice deserving of the enhancement. Id. Here, Judge Pallmeyer found that Ruiz's denial that he had been arrested in the State of Utah to constitute a willful misrepresentation of his record, and that finding is amply supported by the record. Ruiz in fact had been arrested several times in that state, and as the district judge pointed out, several of the arrests were relatively recent--a circumstance that made the possibility of Ruiz having forgotten the arrests implausible. R. 43-3, Sentencing Tr. 9.

Ruiz points out that he had difficulty speaking English and that the district court never held an evidentiary hearing to inquire further into the circumstances concerning his failure to disclose the prior arrests. Neither circumstance rendered the obstruction enhancement inappropriate, however. An interpreter was provided to Ruiz for purposes of the interviews with the probation officer. See R. 41, Pre-Sentence Report, at 17. And although the probation officer did not testify, the Pre-Sentence Report set out the relevant facts in sufficient detail for the district judge to conclude that Ruiz willfully attempted to impede the officer's investigation into his criminal history. The facts themselves were undisputed; Ruiz and his counsel simply took issue with the conclusion that the government asked the court to draw--and that Judge Pallmeyer ultimately did draw--from those facts.

III.

Finding no error in the district court's evidentiary ruling or in its decision to enhance Ruiz's offense level for the obstruction of justice, we AFFIRM his conviction and sentence.

FOOTNOTES

/1 The government alternatively suggests that Lewellen's statements to Sanchez were admissible in part for the non-hearsay purpose of explaining the actions that Sanchez took after the silver automobile arrived. See, e.g., United States v. Lovelace, 123 F.3d 650, 652 (7th Cir. 1997), cert. denied, 522 U.S. 1132, 118 S. Ct. 1088 (1998). Our review of the record discloses that Sanchez recounted far more of Lewellen's statements than were truly necessary to explain his own actions, however.

/2 As at least one commentator has pointed out, when Congress wished to condition the admissibility of certain types of evidence on the presence of corroboration, it imposed that requirement ex-plicitly. McCormick sec. 271 at 203 n.28.

/3 The government asserted that the obstruction enhancement was warranted not only because Ruiz had failed to disclose a number of prior arrests, but also because his testimony at trial was false. The probation officer, however, did not address Ruiz's trial testimony, nor did the district court do so when it imposed the enhance-ment. See R. 43-3, Sentencing Tr. 8-9.