No. 3-02-0451

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2003

 ) 

JAMES CLARAGE, ) Appeal from the Circuit Court

) for the 13th Judicial Circuit,

Plaintiff-Appellant, ) LaSalle County, Illinois

)

v. ) 

) No. 02-L-34

SHERYL H. KUZMA, MYERS, ) 

DAUGHERITY, BERRY, O'CONOR, ) 

KUZMA, LTD, and MICHAEL ) Honorable Cynthia M. 

SCULLY, ) Racugglia, Judge, Presiding 

)

Defendants-Appellees )

)

)

)

(Donald Wagner, )

)

Defendant). )

_________________________________________________________________

PRESIDING JUSTICE McDADE delivered the opinion of the court:

_________________________________________________________________

The plaintiff, James Clarage, owns approximately 128 acres of land in Deer Creek Township, LaSalle County, adjacent to the Starved Rock State Park. Clarage attempted to develop the land into a vacation resort, but was unable to complete the project. This lawsuit resulted from the failure and involves claims of defamation 
per se
, defamation 
per quod
, interference with contract, interference with a business expectancy, and civil conspiracy. The claims have been brought against Sheryl Kuzma, the Deer Creek Township attorney, and her law firm Myers, Daugherty, Berry, O'Conor & Kuzma, and also against Michael Scully, a member of the Deer Creek Township board.  The circuit court of LaSalle County dismissed all claims.  Upon review, we 
reverse 
and remand for further proceedings.  

FACTUAL BACKGROUND

The dispute arose after Clarage began making plans to develop his 128 acres into a resort. He contacted the Deer Creek Township (the Township) about his plans in 1996.  Although the Township had no zoning authority over the property, it did control the maintenance of a road that would be vital to accessing the resort property, and Clarage approached the Township about the possibility of renovating and expanding the road.

After meeting with township officials, Clarage obtained assurances from the Township road commissioner that the Township would support the project and make the necessary upgrades to the road. In November 1996, the Township board voted to approve the road upgrade and to endorse the project.

In 1997, Clarage began negotiations with the Upper Illinois River Valley Development Authority (UIRVDA). The UIRVDA was created by the legislature to issue bonds to fund the development of projects in the upper Illinois River valley. On March 11, 1997, Clarage entered into a "memorandum of agreement" with the UIRVDA in which the Authority agreed that in the event Clarage could satisfy certain conditions, including receiving approval for the project from both UIRVDA and from the Governor, it would issue bonds to finance the development of the resort. Clarage received UIRVDA approval on November 24, 1999.

Clarage also contacted a prominent hotel and golf course planning and construction firm, McGarrity and Company, LLC (McGarrity), requesting its participation in the project. On April 19, 1999, Clarage received a letter from McGarrity which established that they would work together exclusively in the development of the resort. On May 28, 1999, McGarrity received a letter from Starwood Hotels and Resorts Worldwide, Inc., the owner of Sheraton Hotels, indicating that Starwood was interested in participating in the development of the Starved Rock Resort. McGarrity entered into preliminary negotiations with Starwood to have the company manage the resort as a Sheraton property. 

Clarage and his attorney, John Vickers, met with Scully and Kuzma on November 8, 1999. At the meeting, Clarage informed the defendants that he had contracted with McGarrity to develop the Starved Rock Resort and that he was arranging with Starwood to have the resort branded as a Sheraton Hotel. He also notified the defendants that he was attempting to obtain a commitment from UIRVDA to issue $43 million in State of Illinois bonds to finance the project and that he was awaiting approval from UIRVDA before finalizing an agreement with Starwood.

After his meeting with Scully and Kuzma, Clarage learned that someone from the Deer Park Township board was contacting McGarrity and Starwood directly about the plans for the resort. On May 17, 2000, Clarage received a letter from Kuzma in which she indicated that the Deer Park Township board intended to revoke its approval of the resort unless Clarage provided the board with more information concerning the details of the project. Clarage responded by indicating that he was willing to share information with the board, but only on the condition that it agree to sign a confidentiality agreement and to no longer attempt to contact other companies and agencies involved in the project. 

On July 13, 2000, the Township rejected the confidentiality agreement, citing a need to confirm the accuracy of information  received from Clarage about the resort. On August 18, 2000, after failing to reach agreement with Clarage, the board revoked its approval of the project. Board members and Kuzma also resumed contacting the other parties involved in the proposed development and began to write editorials in local papers opposing the development. 

On September 20, 2000, both Clarage and Kuzma received a letter from Starwood’s general counsel, Nadine Greenwood. The letter stated, in part:

“It has come to the attention of Starwood that you have made representations to various parties including LaSalle County, Illinois government officials, Deer Park Board Township [
sic
] members and the Board of Directors of the Upper Illinois River Valley Development Authority that Starwood is associated with the project which you are proposing for development in Starved Rock. Specifically, Starwood has cause to believe that you have represented that the resort will be branded a Sheraton property.

Please be advised that Starwood has never been and is in no way associated with this project. It has not had discussions or correspondence with you or your company regarding the Starved Rock project. It has no plans to license any hotel or resort which may be constructed in connection with this project as a Sheraton or any of Starwood's other hotel brands. Starwood will not condone any further misrepresentation by you concerning its involvement in the project and demands that such misrepresentation cease 

immediately.” 

After receiving the letter, Kuzma sent copies to local media outlets and to the members of the Township board. Michael Scully also distributed copies of the letter to various individuals, including defendant, Donald Wagner. When the UIRVDA learned of the allegations in the letter, it withdrew its approval of the bond issue, thereby effectively ending the development's prospects.

On January 12, 2001, under threat of litigation by Clarage,  Starwood issued a partial retraction of the earlier letter. It recited:

“[s]tatements made in [the prior] letter, to the effect that Starwood has never been associated with this project are not true.  Furthermore, Starwood had no basis to state that Mr. Clarage misrepresented Starwood’s past involvement to any government officials as stated in our letter.  Starwood regrets its error.”

The plaintiff filed a five-count complaint in the circuit court. He alleged that the publication of the Starwood letter by the defendants supported claims for defamation 
per se
, defamation 
per quod
, tortious interference with contractual relations with both McGarrity and the UIRVDA, tortious interference with a business expectancy with the UIRVDA and Starwood, and civil conspiracy. The defendants filed a combined motion to dismiss pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2002)).  The trial court dismissed the entire complaint, ruling that the plaintiff had not stated a cause of action for any form of defamation because the letter was not defamatory and that there was no claim for tortious interference with contractual relations or prospective business relations because no such relationships existed. The plaintiff now appeals the ruling of the trial court.

ANALYSIS

We begin by noting that the trial court dismissed the claims under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2002)). The bases for the dismissal were purely legal: the court found that the Starwood letter was nondefamatory and that the plaintiff had neither contracts with McGarrity or the UIRVDA nor an expectancy of a future business relationship with Starwood or the UIRVDA. The trial court expressly noted in its ruling 
pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2002)), that it would have reached a contrary result on the motion to dismiss under section 2-615 (735 ILCS 5/2-615 (West 2002)).  The court would not have granted the section 2-615 motion because it was of the opinion that any deficiencies in the pleadings could be cured by amendment. We will, therefore, only address whether dismissal was proper under section 2-619.  

Accordingly, our review will be 
de novo
.  
Lipinski v. Martin J. Kelly Oldsmobile, Inc.
, 325 Ill. App. 3d 1139, 1144, 759 N.E.2d 66, 70 (2001).  The standard we employ is the same as the one to be used by the trial court.  All well-pleaded facts in a complaint must be taken as true with all reasonable inferences from it to be drawn in favor of the nonmovant.  Only the legal sufficiency of the plaintiff’s complaint is contested.  
Petty v. Crowell
, 306 Ill. App. 3d 774, 776, 715 N.E.2d 317, 318 (1999).  We apply this standard to plaintiff’s defamation and tortious interference claims.  

Defamation Claims

The plaintiff first argues that the trial court improperly dismissed his claim for defamation 
per se
. In his complaint, he alleged that the defendants Kuzma and Scully republished to various individuals the cease-and-desist letter received from Starwood. The plaintiff alleges that the letter contained false statements that indicated that he had been lying about Starwood's involvement in the resort project. The trial court disagreed and found that the letter was not defamatory.

In order to state a claim for defamation 
per se
, the plaintiff must allege that a statement has been made that "tends to cause such harm to the reputation of [the plaintiff] that it lowers that person in the eyes of the community or deters third persons from associating with her."  
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 87, 672 N.E.2d 1207, 1214 (1996). When the words used are so obviously and materially harmful to the plaintiff that injury to reputation may be presumed, the statement is considered defamatory 
per se.
 
Bryson
, 174 Ill. 2d at 87, 672 N.E.2d at 1214. Four specific categories of statements are 
per se
 defamatory: (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute a want of integrity in the discharge of duties of office or employment; and (4) words that prejudice a party, or impute a lack of ability, in his or her trade, profession or business. 
Bryson
, 174 Ill. 2d at 88, 672 N.E.2d at 1214-15.

The defendant also alleges defamation 
per quod
. In order to establish this claim
, the plaintiff must allege extrinsic facts that demonstrate that an otherwise innocent statement has a defamatory meaning and must allege special damages caused by the statement. 
Bryson
, 174 Ill. 2d at 103, 672 N.E.2d at 1221. 

An allegedly defamatory statement is not actionable if it is substantially true, even though not technically accurate in every detail. 
Gist v. Macon County Sheriff's Department
, 284 Ill. App. 3d 367, 371, 671 N.E.2d 1154, 1157 (1996). The defendant, to defeat a defamation claim, need only establish the truth of the “gist” or “sting” of the allegedly defamatory statement. 
Cianci v. Pettibone Corp
., 298 Ill. App. 3d 419, 424, 698 N.E.2d 674, 678 (1998). Where no reasonable jury could find a lack of substantial truth, the question is one of law. 
Cianci,
 298 Ill. App. 3d at 424, 698 N.E.2d at 679. 

We believe that the Starwood letter meets the requirements for both defamation 
per se
 and defamation 
per quod
.  The gist of the letter to plaintiff, the pertinent portion of which has been quoted above, is that plaintiff has been lying about Starwood’s involvement in his proposed resort.  He has lied, not privately to friends and family, but to government officials.  He is lying because Starwood “has never been and is in no way associated with this project.”  He needs to stop lying about this matter immediately.  The letter effectively impugns plaintiff’s business ethics and portrays him as a businessman undeserving of public trust.  Because the statements in the letter may reasonably be read as either imputing a want of integrity in employment or prejudicing plaintiff in his trade, profession or business, we believe plaintiff has stated (or at least can state) a claim that the letter is defamatory 
per se
.  

We also believe that facts extrinsic to the statement, if proven, would support a claim for defamation 
per quod
.  

The letter, which was republished at a crucial time in the development of the resort, was apparently interpreted by other parties to the project as an indication that the plaintiff was not trustworthy. This is the only reasonable interpretation that could be drawn by someone who had heard the plaintiff tout Starwood's involvement. The UIRVDA presumably drew that conclusion and withdrew its approval of the project. Members of the Starved Rock area community may also have drawn the same conclusion. 

As the defendants explain, a statement is not defamatory if it is substantially true. Such is not the case with the Starwood letter. Initially we note that Starwood issued a document captioned “RETRACTION” in which it acknowledged that the critical salient statements in the earlier letter “are not true.”  Although the first letter denied any involvement on the part of Starwood in the development, Starwood was in fact negotiating its involvement in the resort with the plaintiff through is agent, McGarrity. The defendants were aware of this fact and republished the letter denying Starwood's involvement notwithstanding that knowledge. Readers could then quite reasonably draw the conclusion that the plaintiff had been lying all along about the branding of the development. Because of the foregoing, we find that the gist of the letter was defamatory and that the defendant has stated or can state a claim for defamation 
per se
 and defamation 
per quod
.

Tortious Interference Claims

Next, the plaintiff alleges tortious interference with a business expectancy. Specifically, he claims that the defendants interfered with his expectancy of entering into a business relationship with both Starwood and the UIRVDA.  He alleges that they did this by distributing the contents of the Starwood letter to various government officials and by causing the Deer Creek Township to withdraw its approval of the project. 

In order to state a cause of action for tortious interference with a business expectancy, plaintiff must allege: (1) that he had a reasonable expectation of entering into a valid business relationship; (2) the defendant had knowledge of the plaintiff's expectancy; (3) the defendant purposefully interfered in a way that prevented the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulted from the defendant's interference. 
Fellhauer v. City of Geneva
, 142 Ill. 2d 495, 511, 568 N.E.2d 870, 878 (1991).

We believe that the defendant has established the existence of a reasonable expectancy of the commencement of a business relationship with Starwood.  The plaintiff was in contact with Starwood and also relied on McGarrity to develop a relationship with Starwood. The parties were in the preliminary stages of negotiations, and the record supports an inference that plaintiff had a reasonable expectation that the relationship would continue. The republication of the letter prevented that expectancy from ripening into a viable business relationship.  

A valid business relationship between plaintiff and UIRVDA may also have been thwarted by the defamation. To obtain funding for the project, plaintiff was required to seek and acquire the approval of the UIRVDA and the Governor. Plaintiff had received UIRVDA approval, and the only significant hurdle left to overcome was receipt of the Governor's blessing. The plaintiff was well on his way to getting that, as he had secured recommendations from a number of prominent community leaders urging the Governor to approve the project. Then, the letter was republished. Shortly after, the UIRVDA revoked its approval of the project, and plaintiff's chances of receiving bond funding were dashed. We believe the facts in the record indicate the existence of a legitimate expectancy of the continuation of a business relationship, which was damaged by the defendants’ republication of the Starwood letter.

The plaintiff also claims that the defendants tortiously interfered with contractual relationships with both UIRVDA and with McGarrity. In order to state a cause of action, the plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) defendant's awareness of the contractual obligation; (3) defendant's intentional and unjustified inducement of a breach; (4) subsequent breach caused by defendant's unlawful conduct; and (5) damages. 
Delta Medical Systems v. Mid-America Medical Systems, Inc
., 331 Ill. App. 3d 777, 796, 772 N.E.2d 768, 785 (2002).

McGarrity and the plaintiff entered into an agreement to cooperate, exclusively, in the design and construction of the resort. The existence of the contract is supported by a letter signed by Clarage, which expressed the parties’ intent to work together, and by other documents in the record which describe the exact role that McGarrity was to play in the development. We believe it was error for the trial court to find there was no contract. 

 We also believe that the plaintiff had a contract with UIRVDA. The authority entered into an agreement with Clarage to issue bonds to finance the project, and in return, Clarage promised to pay interest on the loaned money. The agreed terms were conditioned on the approval of UIRVDA, which had already been secured, and that of the Governor which it was reasonable to anticipate would have been forthcoming absent the defendants' interference. We believe, therefore, that it was also error for the court to find that there was no set of facts that could be proven under the allegations of the complaint which would entitle plaintiff to relief on his claims of tortious interference. 

Finally, the plaintiff has alleged a civil conspiracy between the defendants. In order to state a claim for civil conspiracy, the plaintiff must allege (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act caused by one of the parties; and (4) the overt act was done pursuant to and in furtherance of a common scheme. 
Vance v. Chandler
, 231 Ill. App. 3d 747, 750, 597 N.E.2d 233, 236 (1992).

In this instance, the plaintiff has alleged as the unlawful acts of the defendants' conspiracy defamation 
per se
, defamation 
per quod
, tortious interference with contractual relations and tortious interference with a business expectancy. The trial court dismissed the claim since it found that the plaintiff could not state a claim for the underlying unlawful acts enumerated in the other claims of the complaint. Since we have found improper the dismissal of the plaintiff's claims for defamation, 
interference with a business expectancy and interference with contract to be improper, plaintiff's claim for civil conspiracy must be reinstated.  The issue of the viability of that claim on its merits was not addressed by the trial court and is not before us.   Finally, we are asked to decide to what extent the defendants may be protected by privilege and the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-10.1 et seq. (West 2002). The trial court found that conditional privilege protected Sheryl Kuzma, her law firm, and Michael Scully from liability to the extent they published the defamatory letter to members of the Township board. The court also found that Michael Scully was protected from liability for distributing the letter to the township board by the Tort Immunity Act.  The plaintiff urges us to find that Scully and Kuzma were not protected by the Tort Immunity Act or conditional immunity, even for the distribution of the letter to Township board members.

There are three classes of conditional privilege: (1) when the interests of the person publishing the defamatory statement are involved; (2) when the interests of the person to whom the defamatory statement is published, or of some other third party, are involved, or (3) when a recognized interest of the public is involved. 
Kuwik v Starmark Star Marketing & Administration, Inc.
, 156 Ill. 2d 16, 29, 619 N.E.2d 129, 135 (1993).  The defendant has the burden of proving the existence of the privilege. 
Kuwik
, 156 Ill. 2d at 27, 619 N.E.2d at 134. 

A qualified privilege may not protect the publisher from liability in cases where the privilege has been abused
. To prove an abuse of the privilege, the plaintiff must show that there was a reckless disregard of the plaintiff's rights and an intent to injure. 
Kuwik
, 156 Ill. 2d at 30, 619 N.E.2d at 136. Acts that constitute a reckless disregard for the plaintiff's interests include the failure of the defendant to properly investigate the truth of the statement and the failure to limit the scope of the statement or to limit the distribution of the statement only to proper parties. 
Gibson v. Philip Morris, Inc.
, 292 Ill. App. 3d 267, 275-76, 685 N.E.2d 638, 645 (1997).

Here, the defendants have alleged an interest in the subject matter of the letter that presumptively would protect them from liability. The Township undoubtedly was concerned with the status of the resort and had an interest in knowing whether the resort would indeed go forward as advertised. Kuzma and Scully were merely serving that need when they published the letter to the board. Nevertheless, the plaintiff has also alleged facts that indicate that the defendants knew the statements to be false when they sent the letter to members of the board. To the extent that this is true, and we must accept that it is, the conditional privilege will not shield them from liability for the challenged conduct.  The alleged reckless disregard for the falsity of the letter would, if proven, bar the application of the conditional privilege. 
Kuwik
, 156 Ill. 2d at 24-25, 619 N.E.2d at 133.  

Defendant Kuzma also claims that she and her law firm are protected by qualified privilege from liability for interference with a business expectancy or interference with contract.  We find that, under the facts alleged, the qualified privilege does not apply. 

To overcome an attorney’s conditional privilege with respect to a client, a plaintiff must allege that the attorney acted with malice independent of and unrelated to her desire to protect the interests of her client.  
Schott v. Glover
, 109 Ill. App. 3d 230, 235, 440 N.E.2d 376, 380 (1982).  To meet this burden, the plaintiff must set forth factual allegations from which actual malice may reasonably be said to exist.  
Schott
, 109 Ill. App. 3d at 235, 440 N.E.2d at 380.  We believe that the plaintiff’s allegations are sufficient in this regard.  The plaintiff has alleged that defendant Kuzma republished a letter that she knew to be false and that the result of the republication was the collapse of plaintiff’s effort to develop the resort.  We believe that it may reasonably be said that Kuzma’s republication of the false and defamatory letter was not related to the protection of her client’s interests but, rather, was related to the sabotage of the plaintiff’s interests.  We find that the qualified privilege does not apply.  

Defendant Scully also claims that his actions are protected by sections 2-206 and 2-201 of the Tort Immunity Act. Section 2-206 states: 

“A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked.”  745 ILCS 10/2-206 (West 2002).  

Scully argues that the section applies to his conduct because Clarage was seeking the approval of the Deer Creek Township for the resort. We fail to see how this fact is relevant. Although it is true that Clarage was seeking the Township's approval, Scully was not granting or denying that approval when he republished the defamatory letter. The section that Scully attempts to rely on provides for immunity in two circumstances: when a public official causes injury by issuing a license, permit or approval, and when a public official causes injury by refusing to issue a license, permit or approval. Scully did not issue the approval requested by Clarage when he republished the letter, nor did he deny approval. Instead, he published a defamatory statement, which has nothing to do with the granting or withholding of a license. Section 2-206, by its very terms, does not apply.

Finally, defendant Scully claims the protection of section 2-201 of the Tort Immunity Act. This section provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."  745 ILCS 10/2-201 (West 2002).  Again, we believe that the provision is inapplicable. To satisfy the provision, the defendant's conduct must be either (1) the determination of policy, or (2) an exercise of discretion pursuant to an official policy. 
Stratman v. Brent
, 291 Ill. App. 3d 123, 132, 683 N.E.2d 951, 957 (1997). 

Scully has failed to show that he was acting in the pursuit of a Township policy. Scully was appointed by the Township board to meet with the plaintiff about the proposed development, but there is no indication that the Township granted him any more authority than that. At the time of the republication of the letter, Clarage was not actively seeking any permit or approval from the Township board. Nevertheless, Scully continued to involve himself in the plaintiff's affairs and published an allegedly defamatory statement damaging to the plaintiff's interests. Scully has not shown that this was done pursuant to an official policy of the Township. We conclude that section 2-201 does not offer Scully any protection. 

CONCLUSION

We believe that the trial court erred in finding that the Starwood letter, when republished by the defendants, was not defamatory. We find that the letter was substantially untrue and that the gist of the letter was defamatory and capable of supporting claims for defamation 
per se
 and defamation 
per quod
. In addition, we find that the plaintiff has sufficiently alleged the existence of a business expectancy with Starwood and with the UIRVDA, and that he has also adequately alleged the existence of contracts with both McGarrity and with the UIRVDA. Finally, we find that the defendants' conduct is not protected by conditional privilege or the Tort Immunity Act. The order of the trial court, insofar as it differs from this opinion, is reversed, and the case is remanded for further proceedings.

Reversed and remanded. 

SLATER, J., concurs.

LYTTON, J., dissents. 

JUSTICE LYTTON, dissenting:

I dissent because I think a qualified privilege applies to all of the counts brought by the plaintiff in this complaint. 

1. 
Defamation
 

 The majority believes that a qualified privilege applies to the facts alleged in this case,
 but rejects the application of the privilege because of plaintiff's general allegations of the defendants' reckless disregard of plaintiff's interests.

However, a plaintiff seeking to avoid a qualified privilege must also allege that a defendant's desire to harm him was independent of and unrelated to an attorney's obligation to protect her client (see 
Schott v. Glover
, 109 Ill. App. 3d 230 (1982)), or a township official's duty to his local government.  See 
Kuwick v. Starmark Star Marketing & Administration, Inc.
, 156 Ill. 2d 16 (1993).  Plaintiff does not make these allegations, and the majority cannot tell us where these allegations might be.

The essence of Starwood's September 20th letter states that plaintiff had no discussions with Starwood, that plaintiff had not received an agreement from Starwood for a licensing agreement from a Sheraton Hotel at the resort, and that plaintiff had not submitted an application for a Starwood franchise.  The majority has not stated why  Kuzma or Scully knew the letter was false, particularly since the letter was substantially true.  The majority simply does not and cannot explain why the defendant's conduct was unrelated to the interests that give rise to the privilege in the first place.  See 
Guice v. Sentinel Technologies, Inc.
, 294 Ill. App. 3d 97 (1997).  Since there is no indication in the pleadings that any of the defendant's acts were independent of, and unrelated to, the protection of the interests of the township, the trial court should be affirmed.

2.  
Tortious Interference Claims

A
 qualified privilege also applies to the tortious interference claims, and the same pleading requirements and defenses apply as discussed above. 

The allegations made on these issues include defendants' contact with Starwood and UIRVDA in their capacities as township attorney and trustee.  While somewhat intrusive, their behavior in trying to ascertain the relationship between plaintiff and Starwood was of a fact-finding nature.  Fact-finding is surely a function of a township attorney and township official facing the kind of project that plaintiff proposed.  To overcome the qualified privilege, a plaintiff must have alleged facts sufficient to prove that defendants' acted with actual malice, that is, a desire to harm plaintiff which was independent of and unrelated to their function in protecting the township interests.  
Citylink Group, et al. v. Hyatt Corp
, 313 Ill. App. 3d 829 (2000); 
Schott v. Glover
, 109 Ill. App. 3d 230 (1982).  The majority never discloses what these allegations are.  As stated above, plaintiff had not met its burden of pleading that the defendant's conduct was unjustified or malicious.  See 
Fellhauer v. Geneva
, 142 Ill. 2d 495 (1991).

I would affirm the trial court.