# In the
# United States Court of Appeals
## For the Seventh Circuit

───────────

No. 04-2671

MARK CODY,

*Plaintiff-Appellant,*

v.

TAFT HARRIS and DONTRON, INC.,

*Defendants-Appellees.*

───────────

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 934—**Marvin E. Aspen**, *Judge.*

───────────

ARGUED JANUARY 14, 2005—DECIDED MAY 31, 2005

───────────

Before RIPPLE, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Someone played a dirty cyber-trick on WPWX-FM by posting offensive content on WPWX.com. Mark Cody, who had worked at the station for six months but was terminated right before the offensive posting, was accused of the misdeed by his former boss. Cody, who in fact had nothing to do with the prank, sued his former employer for defamation and interference with contractual relations. Of the nine counts in his complaint, the district court dismissed five and granted summary judgment for the defendants on the remaining four. For the reasons stated herein, we affirm.

## I. History

We summarize the facts as pled by Cody. WPWX-FM is an urban-contemporary radio station owned and operated by Dontron, Inc., and broadcast from Crawford Studios in Hammond, Indiana. Cody started working as the station's general sales manager, under general manager Taft Harris, on March 26, 2001. His major responsibilities included hiring and managing the station's sales staff, setting a sales budget, and attaining the sales budget. On October 4, 2001, while he was on paternity leave, Cody received a facsimile informing him that he had been fired by WPWX. The station cited Cody's failure to hire the sales team he had promised and failure to achieve the required sales budget as the reasons for termination.

While acting as general sales manager, Cody thought it would be wise for the station to establish a presence on the internet. He recommended to Harris and other management personnel that the station reserve "WPWX.com" as a domain name, but, in early June 2001, Cody found out that a William Slembarski already owned that domain name. After receiving authorization from management, Cody tried to work out a deal to purchase the domain name from Slembarski. The negotiations were ongoing when Cody was terminated and the purchase was never completed.

At some point after Cody's termination, offensive content including some pornographic images appeared on WPWX.com. Harris viewed the website after a January 2002 sales meeting and said, "This has got to be Mark Cody. I know Mark did this. I know he is responsible for this." Later, at another sales meeting, Harris commented to the sales staff that there was evidence pointing to Cody's involvement in posting the offensive content. Harris also told other WPWX executives that Cody was behind the situation.

*Inside Radio*, an independent radio industry publication, published two articles having to do with Cody and WPWX.

The first, dated October 8, 2001, discussed Cody's termination. The second, published on January 11, 2002, discussed the website incident. It quoted Harris as speculating that "[i]t's got to be a competitor or one particular ex-employee," and went on to describe the website and state that Crawford Broadcasting planned to take legal action against the perpetrator. Harris claims that he never made the statements attributed to him in this article. While he admits to speaking with reporter Jerry Del Colliano, Harris claims that he told Del Colliano he had "no idea" who was responsible for the website, even when specifically asked whether he thought Cody was the culprit.

After some difficulty in finding a new job, Cody accepted a position as independent contractor for WVON-AM in November 2001. In that role, he accompanied WVON's general sales manager, Dan Johnson, to Crawford Studios. Cody alleges that a Crawford Studios employee then placed a call to WVON indicating that Johnson was banned from Crawford Studios because of his relationship with Cody. Cody claims that, as a result of this call, his independent contractor relationship with WVON "disintegrated" in January 2002.

In March 2002, Cody entered into an agreement with Central City Productions, Inc. ("CCP"), which also had a business relationship with Crawford Studios. Cody alleges that, in July 2002, CCP refused to pay Cody per their agreement because of pressure exerted by Crawford Studios. He claims that Harris directed Crawford Studios not to deal with CCP because of its relationship with Cody, and that Harris told CCP's chief executive officer that Cody misrepresented CCP's capabilities to prospective business partners.

Cody initially brought suit against Harris and Dontron in the Circuit Court of Cook County, Illinois, in December 2002. The defendants properly removed the case to federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1332; 28

U.S.C. § 1441. Cody's nine-count third amended complaint, filed on August 6, 2003, alleged: (1) that Harris's statements about Cody at staff meetings (indicating his involvement in the offensive website postings) constituted defamation *per se*; (2) that Harris's statements to *Inside Radio* constituted defamation *per quod* and defamation *per se*; (3) that Harris and Dontron intentionally interfered in Cody's contract with CCP; and (4) that Dontron intentionally interfered in Cody's contract with WVON.

The district court granted the defendants' motion to dismiss the five counts related to Harris's statements in staff meetings and contract interference. After discovery, the court granted summary judgment for the defendants on the counts regarding Harris's statements to *Inside Radio*. Cody appeals both rulings.

## II.  Analysis

The parties agree that Illinois law applies to each of Cody's substantive claims. For the reasons stated below, we do not believe that Harris's comments to WPWX staff members constituted defamation *per se* under Illinois law. Cody has also failed to state a claim for interference with contractual relations. Finally, because the district court did not abuse its discretion in ruling that the *Inside Radio* articles were inadmissible hearsay, summary judgment for Harris and Dontron was proper on the defamation counts related to those articles.

### A.  Counts I and II: Harris's Statements in Staff Meetings

Count I of Cody's complaint alleges that Harris's comments at WPWX staff meetings, accusing Cody of posting the offensive material on WPWX.com, constituted defamation *per se*. Count II seeks damages from Dontron for the same statements under the theory of *respondeat superior*.

Both counts were dismissed by the district court for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6). We review a motion to dismiss *de novo. Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 618 (7th Cir. 2001). In so doing, we must take all well-pled facts in the complaint as true and draw all reasonable inferences in favor of Cody. *See id.* The complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Under Illinois law, a statement is defamatory if it harms the reputation of another, lowering him in the eyes of the community, or if it discourages others from associating with him. *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). Some statements are considered defamatory *per se* because they are so obviously and materially harmful to a plaintiff that his injury may be presumed and he does not need to prove actual damages to recover. *See id.* There are five such categories of statements in Illinois: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those imputing a lack of ability, or that prejudice a party in his trade, profession, or business; and (5) those imputing adultery or fornication. *Id.* at 1214-15.

On appeal, Cody argues that Harris's statements in staff meetings accusing Cody of posting pornography on WPWX.com qualify as defamation *per se* under the first, third, and fourth categories. In the district court, however, he made arguments based only on the third and fourth categories. An argument raised for the first time on appeal is waived, so we need not discuss whether Harris's statements impute the commission of a crime. *See Maciosek v. Blue Cross & Blue Shield United of Wis.*, 930 F.2d 536, 540 n.2 (7th Cir. 1991).

Whether Harris's statements fall into the third or fourth categories of defamation *per se* is the question we must answer. We begin by reviewing exactly what the statements were: "This has got to be Mark Cody. I know Mark did this. I know he is responsible for this." Basically, Harris was saying to WPWX staff that Cody, an ex-employee, was retaliating against the station by posting offensive or obscene content on the website bearing the station's call letters in its domain name. He was not disparaging Cody's ability to manage a sales force. A careful study of Illinois caselaw shows that this is not defamation *per se*.

Statements that have been deemed defamatory *per se* by Illinois courts under the third and/or fourth categories have always been related to job performance; to succeed, the plaintiff must have been accused of lacking *ability in his trade* or doing something bad *in the course of carrying out his job*. *See Clarage v. Kuzma*, 795 N.E.2d 348, 356 (Ill. App. Ct. 2003); *Parker v. House O'Lite Corp.*, 756 N.E.2d 286, 296 (Ill. App. Ct. 2001). For example, in *Parker*, the plaintiff, whose job was drafting lighting specifications for a new hospital, was accused of rigging the specifications so that only his brother-in-law would be able to get the job. *Parker*, 756 N.E.2d at 292. This alleged "want of integrity" was in performing the plaintiff's duties of employment, and the court stated that it constituted defamation *per se. Id.* at 296. *Clarage* presented a similar situation: a property developer was accused of lying to officials in the course of a resort development deal, and the accusation was deemed to constitute defamation *per se. Clarage*, 795 N.E.2d at 356. The court pointed out that the plaintiff was not accused of lying to family and friends, but rather to government officials with whom it was his *job* to communicate honestly. *See id.*

Conversely, attacks related to personal integrity and character have not been deemed defamatory *per se. See Heying v. Simonaitis*, 466 N.E.2d 1137, 1143 (Ill. App. Ct. 1984). In *Heying*, the court held that statements made by

doctors regarding personality conflicts between the plaintiff nurse and her fellow employees did not impugn her ability as a nurse. *Id.* In another case discussed by both Cody and the defendants, the plaintiff's former employer told a prospective employer that the plaintiff had been terminated because he made calls to 1-900 numbers while on the job; although this accusation might have damaged the plaintiff's personal reputation, and might well have hurt his chances for getting the new job, it was not deemed defamatory *per se* because it did not disparage the plaintiff's skills as a manager. *See Sangston v. Ridge Country Club*, No. 92 C 1981, 1992 WL 317138, at *4 (N.D. Ill. Oct. 29, 1992).

In this case, Harris's comments did not disparage Cody's skills as a sales manager, but were critical of his personal integrity. We do not believe that because Cody undertook the task of procuring the WPWX website while he held the position of sales manager, any accusations related to misuse of that website after employment reflect on his abilities in that job. The comments at issue were not related to Cody's work at WPWX; Harris essentially implied that Cody has a bad temper, is unable to control his anger, and lacks the integrity and judgment to resist getting revenge in an immature and vicious manner. All of these implications go to Cody's personal, rather than professional, traits. The alleged misconduct did not even occur while Cody was on the job, as it did in *Sangston*; Harris accused Cody of retaliating against the station not while he was an employee, but after (and apparently because of) his termination. This situation is not like the Illinois cases that have found defamation *per se* when a plaintiff's work or conduct while carrying out his employment duties has been impugned.

In some cases, personal integrity is so intertwined with job skills, that an attack upon it could constitute defamation *per se. Kumaran v. Brotman*, 617 N.E.2d 191, 199 (Ill. App. Ct. 1993) (holding that a newspaper article accusing a school-

teacher of filing "scam" lawsuits was defamatory *per se* because part of a teacher's job is to set a good example and serve as a role model for students). We do not believe, nor does Cody argue, that this is such a case. We see no reason to believe that managing the sales department of a radio station requires a degree of integrity above and beyond that required for any job. It is true that Harris's accusations suggest that Cody lacks certain qualities desirable in an employee, and the accusations might indeed make it harder for Cody to get a job. But the increased difficulty in finding employment would be due to Cody's perceived bad character traits, not because of his perceived inability to do the job. Cody must plead and prove actual damages to recover for defamation, which he has not done.

### B. Counts VII, VIII, and IX: Tortious Interference with a Contract

In counts VII and VIII of his complaint, Cody alleges that Harris and Dontron interfered in his contractual relationship with CCP. Cody says that the defendants pressured CCP to terminate its agreement with him and told a CCP executive that he made misrepresentations about CCP's capabilities. In count IX, Cody alleges that Dontron also interfered with Cody's WVON contractual relationship by banning the station's general sales manager from Crawford Studios after he was spotted on the premises with Cody. Because these counts were dismissed by the district court, our review is *de novo* and we take all well-pled facts as true. *See Horwitz*, 260 F.3d at 618.

In order to state a claim for tortious interference with contractual rights, Cody must plead: (1) the existence of a contract; (2) the defendants' awareness of the contract; (3) the intentional inducement of a contract breach; (4) an actual breach of the contract; and (5) damages. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545

N.E.2d 672, 676 (Ill. 1989). A major deficiency in Cody's complaint is that he cannot plead facts to show a breach of either contract, because the arrangements with both CCP and WVON were terminable at will.[1] Under Illinois law, "[a] defendant's inducement of the cancellation of an at-will contract constitutes at most interference with a prospective economic advantage, not interference with contractual relations." *Prudential Ins. Co. of Am. v. Sipula*, 776 F.2d 157, 162 (7th Cir. 1985); *Accurso v. United Airlines, Inc.*, 109 F. Supp. 2d 953, 962 (N.D. Ill. 2000). The district court properly dismissed Cody's claims for tortious interference with a contract.

Apparently conceding that he should have pled these counts as interference with prospective economic advantage, Cody invites this court to treat the counts as if they had been so pled and reverse. "[A] plaintiff cannot amend his complaint in his appeal brief[,]" *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 594 (7th Cir. 2003), and we will not reverse the district court's dismissal on this basis.[2] That said, we note that Cody's current complaint does not support a claim for interference with a prospective economic advantage. The elements of this tort are: (1) a reasonable expectation of entering into a valid business relationship; (2) defendants'

---

[1]  Cody does not dispute that his relationships with both entities were terminable at will. The CCP agreement stated that it was to "commence on March 1, 2002 and continue until revoked by either party in writing." (Compl., Ex. 4, ¶ 2.) Similarly, the agreement between Cody and WVON stated that it "may be terminated by either party upon 30 days written notice to the other party." (Compl., Ex. 2.)

[2]  It is not clear why Cody did not amend his complaint to reflect the more appropriate claim at an earlier time; he filed four versions of his complaint in the lower courts, and the defendants moved to dismiss earlier iterations of the contract interference counts with the same arguments they make now.

knowledge of this expectation; (3) defendants' purposeful interference that prevents the plaintiff's legitimate expectation from becoming a valid business relationship; and (4) damages. *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991). Cody did not plead that he had a reasonable expectation that his relationships with either CCP or WVON would continue longer than they did—July 2002 and January 2002 respectively. Both agreements state that they could be terminated at any time, and nothing in the pleadings suggests that business relationships of longer duration could reasonably have been expected.

### C. Counts III, IV, V, and VI: Harris's Statements to Inside Radio

The remaining counts in Cody's complaint are related to the statements that Harris allegedly made to *Inside Radio*. Counts III and V seek to recover from Harris for defamation *per quod* and defamation *per se*, respectively. Counts IV and VI seek the same from Dontron under the theory of *respondeat superior*. The district court granted summary judgment for the defendants on all counts. We review a decision granting summary judgment *de novo* and consider all evidence in the light most favorable to the nonmoving party. *Smock v. Nolan*, 361 F.3d 367, 370 (7th Cir. 2004). Evidentiary rulings, though, are reviewed for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); *United States v. Hall*, 165 F.3d 1095, 1108 (7th Cir. 1999).

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden is on the moving party (in this case, the defendants) to demonstrate that there is no material question of fact with respect to an essential element of the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that has been done, the nonmoving

party must submit evidence that there is a genuine issue for trial in order to survive the motion for summary judgment. Fed. R. Civ. P. 56(e).

To succeed on a claim for either defamation *per se* or defamation *per quod*, a plaintiff must first prove that a defamatory statement has been made. *See Parker*, 756 N.E.2d at 291-92. Harris and Dontron satisfied their initial burden with respect to this element by submitting Harris's affidavit stating that he never told the *Inside Radio* reporter that Cody was responsible for the material on WPWX.com. At that point, the ball was in Cody's court to back up his claim with evidence that Harris *had* made the accusation. The only thing Cody offered in the way of proof was the *Inside Radio* article itself. The district court's ruling to exclude the article as inadmissible hearsay, therefore, was outcome determinative.

The article is clearly hearsay. Fed. R. Evid. 801(c) (defining hearsay as a statement made by an out-of-court declarant offered to prove the truth of the matter asserted). The out-of-court declarant, *Inside Radio* reporter Del Colliano, quoted Harris as saying that "a particular ex-employee" was behind the website.[3] Cody is offering the article as proof that Harris made the accusation. Cody urged the district court to admit the article under either the present sense impression exception or the residual exception to the hearsay rule. Fed. R. Evid. 803(1), 807.

The district court did not find application of either exception appropriate in this case. The three criteria for admission of a statement as a present sense impression are: "(1)

---

[3] Cody asserts in his reply brief that Harris is the declarant, but he is wrong. The truth of Harris's alleged accusation, that is, whether or not Cody posted the material on WPWX.com, has never been at issue in this case; we are concerned with whether or not Harris *made the accusation* to Del Colliano as Del Colliano represented in the article.

the statement must describe an event or condition without calculated narration; (2) the speaker must have personally perceived the event or condition described; and (3) the statement must have been made while the speaker was perceiving the event or condition, or immediately thereafter." *United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001). Cody has not provided enough information to evaluate whether these criteria have been met. For example, we have no idea whether Del Colliano wrote the article with "calculated narration," nor do we know what the time lapse was between Harris's interview and the writing of the article. Similarly, the residual exception may be applied if the hearsay has "circumstantial guarantees of trustworthiness." Fed. R. Evid. 807. In this case, Cody has not offered any evidence related to Del Colliano or his method of reporting, or anything else that would give the district court guarantees that Del Colliano's statement was trustworthy. Especially given the "light appellate touch signified by the 'abuse of discretion' formula" with which we review decisions on the admissibility of evidence, *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 744 (7th Cir. 1997), we will not disturb the district court's ruling.

The district court did not abuse its discretion in refusing to admit the article itself as evidence of Harris's statement. Cody has not, then, satisfied the burden he carries of demonstrating that there is a material fact in issue, and we must also affirm the district court's decision granting summary judgment for Harris and Dontron.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court dismissing counts I, II, VII, VIII, and IX, and granting summary judgment for the defendants on counts III, IV, V, and VI.

No. 04-2671                                                    13

A true Copy:

    Teste:

                                   _____
                                   *Clerk of the United States Court of*
                                   *Appeals for the Seventh Circuit*